D. GILL SPERLEIN (172887)
THE LAW OFFICE OF D. GILL SPERLEIN
584 Castro Street, Suite 879
San Francisco, California  94114
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

MARC JOHN RANDAZZA (269535)
Liberty Media Holdings, LLC, General Counsel
10620 Southern Highlands Pkwy. #110-454
Las Vegas, Nevada 89141
Telephone: (888) 667-1113
Facsimile: (305) 437.7662
marc@corbinfisher.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IO GROUP, INC., a California corporation, CHANNEL ONE RELEASING, Inc., a California corporation and LIBERTY MEDIA HOLDINGS, LLC., a California corporation,<br><br>    Plaintiffs,<br>vs.<br><br>GLBT, Ltd., a British limited company, MASH and NEW, Ltd., a British limited company, PORT 80, Ltd., a company of unknown origin or structure, STEVEN JOHN COMPTON, an individual living in the United Kingdom, and DAVID GRAHAM COMPTON, an individual living in the United Kingdom.<br><br>    Defendants. | CASE NO.:  C-10-1282 (MMC)(DMR)<br><br>**DECLARATION OF D. GILL SPERLEIN IN SUPPORT OF PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**<br><br>**Date:    August 25, 2011**<br>**Time:   11:00 a.m.**<br>**Location: Ct Rm 4, 3rd Fl.**<br>**Judge:  Hon. Donna M. Ryu**<br><br>Trial Date:  November 28, 2011 |

I, D. Gill Sperlein, declare:

1. I am a member of the State Bar of California and the bar of this Court. I am the attorney of record in this matter.

2. I served a set of thirty-six document requests for each of the corporate Defendants in this matter on January 14, 2011. The requests were broad and covered a wide range of documents relevant to the litigation at hand.

3. In response, Defendants produced only a few documents. These included documents relating to the formation of the businesses, a sheet of financial information, and references to the urls of Defendants' websites. Defendants produced no e-mails or other correspondence and no internal documents.

4. One of the requests we made was "**REQUEST No. 2:** Produce all DOCUMENTS in DEFENDANT'S possession that reference the Gayforit.com website." Plaintiffs made the same request for the other two relevant websites. Defendants made no objection to these requests but rather directed Plaintiffs to the websites. Their initial response was "All non privileged documents, see attached log, will be produced for inspection provided any production does not violate UK and European data protection legislation and/or the privacy rights of third parties." When pressed they later submitted a supplemental response that, "All pages of the website located at www.gayforit.com." When the Court ordered them to produce documents they simply added a 1.8 million page database to their privilege log.

5. My co-counsel, Marc Randazza, and I met and conferred with Defense Counsel and prepared several joint letters in accordance with the Court's procedures for resolving discovery disputes. Throughout the process, Defense Counsel thwarted Plaintiffs' efforts to adequately brief the issues by refusing to identify the nature of the withheld or missing documents and by withholding Defendants' arguments until just before the letter briefs were due.

6.      In each case, I requested early drafts from Defense Counsel and on two of those occasions, Defense Counsel withheld his portion of the letter until the last minute (respectively, Thursday 5/5 8:56 pm; Tues. 5/17 at 2:32 pm; and Friday 6/3, 1:56 pm).

7.      On Thursday June 23, 2011, Defense Counsel e-mailed a privilege log which contained the following entry:

| Number | Date of Document(s) | Title of document | Author & recipients | Description of documents | Privilege claimed | Location |
|---|---|---|---|---|---|---|
| 3 | 02/02/2008 to date | Database for all Websites. In excess of 1,800,000 pages. | Defendants GLBT Ltd and Mash & New Ltd No recipients | Database relating to websites and users | EU data protection and privacy rights of third parties as it relates to personal data. | With GLBT Ltd- located on server. |

This was the first time Defendants identified these records to Plaintiffs.

8.      During the course of this litigation, I have visited the three websites in question and they continue to operate as they did previously.  I have continued to send takedown notices on behalf of Plaintiffs and other clients.

9.      I recently navigated by Internet browser to http://www.gayforit.com/privacy.  I printed this page and attached it hereto as Exhibit A.

10.     In their responses to discovery requests, Defendants have said they do not have any copies of audiovisual files that Plaintiffs requested to have blocked or removed from their websites.

11.     In response to the Court's order to respond to Req. No. 7, Defendants produced a spreadsheet that appears to be a summary or compilation of the information found in the actual billing files.  The compilation does not include the customers' user names.

12.     In response to the Court's order to respond to Discovery Request Number 9, Defendants produced a summary in the form of an Excel Spreadsheet.  David Compton included a copy of this summary as attachment A to his declaration.  For the Court's convenience, I attach it as Exhibit B to this declaration.  Defendants did not explain how they created this summary.  Date fields are indecipherable.

13.     On behalf of Plaintiffs, I filed this action on March 26, 2010.  However, two months prior I put Defendants on notice that litigation was likely.  At that time, I put them on notice of their duty to preserve evidence by sending them a letter that included the following language.  I capitalized and bolded portions of the letter as indicated:

"As litigation is very likely with regard to this matter, I once again remind you of your duty to preserve evidence.

**YOU ARE OBLIGATED TO PRESERVE ANY AND ALL EVIDENCE THAT MAY REASONABLY BE RELEVANT.  DO NOT DELETE OR ERASE ANY FILES FROM YOUR COMPUTER(S) OR REFORMAT/SCRUB YOUR HARD DRIVE(S).  IF YOU TAKE ANY ACTION THAT DESTROYS RELEVANT EVIDENCE, THE JUDGE MAY ALLOW AN INFERENCE THAT THE EVIDENCE WAS FAVORABLE TO THE OPPOSITION.  THE JUDGE ALSO COULD ORDER DEFAULT TO BE ENTERED IN FAVOR OF PLAINTIFFS OR IMPOSE OTHER SANCTIONS.  THIS DUTY TO PRESERVE EVIDENCE INCLUDES WITHOUT LIMITATION, ALL ELECTRONIC VIDEO FILES OR OTHER ELECTRONIC FILES AND/OR DATA RELATING TO COPYING OR TRANSMITTING VIDEO FILES, RELEVANT E-MAILS, DVDs, COPYING/RIPPING EQUIPMENT, OR PROGRAMS/APPLICATIONS USED TO COPY VIDEO FILES.  SUCH EVIDENCE ALSO INCLUDES COPIES OF ANY WORK REMOVED FROM YOUR SYSTEM AT THE DEMAND OF A COPYRIGHT HOLDER, INCLUDING BUT NOT LIMITED TO MY CLIENTS.  ALSO, PRESERVE ALL NOTICES OR REQUESTS TO REMOVE CONTENT AND ALL INFORMATION WITH REGARD TO ANY INDIVIDUAL WHO MAY HAVE PROVIDED CONTENT TO YOU OR YOUR AFFILIATED COMPANIES FOR REPRODUCTION AND DISTRIBUTION THROUGH THREE AFOREMENTIONED WEBSITES.  THIS LIST IS BY NO MEANS EXHAUSTIVE. SPECIFICALLY, PLEASE PRESERVE COPIES OF ANY VIDEO FILES THAT APPEAR OR HAVE APPEARED ON YOUR SITES, EVEN IF SUCH FILES ARE REMOVED FOR WHATEVER REASON."**

I have attached a copy of the letter at Exhibit C. I provided one additional letter that is attached as Exhibit D. Plaintiff Liberty Media Holdings, LLC's counsel also sent a letter which David Compton does not deny receiving. I have attached that letter as Exhibit E.

14. I have nearly ten years experience in matters of copyright infringement, specifically in relationship to the entertainment industry. For several years the trade organization representing the industry, the Free Speech Coalition, has engaged me to develop and administer a program designed to reduce infringement on websites though non-litigation means. I represent at least twenty different adult production companies. I know from personal experience that producers or their representatives only send takedown notices for a small fraction of the infringing works that appear on websites such as those the Defendants in this matter operate.

15. Marc Randazza and I met and conferred face to face with Jonathan Capp on several outstanding discovery issues when all parties were together in San Diego for the taking of Defendants' depositions. I inquired as to the illegibility of the date fields in Defendants' summary of repeat infringer data. Mr. Capp replied to my inquiry by saying, "That's just the way it is."

16. On June 29th and 30th I took the deposition of Defendant GLBT, ltd through the testimony of David Compton and Steven Compton. The court reporter has supplied me with advance copies of the deposition testimony. I make the following statements from my recollection and the advance deposition transcript, but will supplement the record with the official deposition transcripts as soon as I receive them.

    a. Defendant David Compton testified that GLBT receives a lot of e-mail.

    b. Defendant David Compton testified that after he receives e-mail, the system is set to automatically delete e-mails after two or three days unless he places them in a separate folder for retention.

   c. Defendant David Compton testified that he does not deny receiving Exhibits C, D & E, but that he could not recall having read them because he "received quite a lot of rubbish."

   d. Defendant David Compton testified that he did not modify the system to retain e-mails after he was notified of the lawsuit.

   e. Defendant David Compton testified that GLBT does not retain copies of notices of infringement and did not modify the system to retain e-mails after learning of the lawsuit.

   f. Defendant David Compton testified that GLBT did not retain copies of any audiovisual files removed from its system after claims of infringement.

   g. Defendant David Compton testified that he did not believe the Data Protection Act required GLBT to delete audiovisual files.

   h. Defendant David Compton testified that GLBT did not take measures to preserve e-mails or takedown notices after learning of this lawsuit.

   i. Defendant David Compton testified that when GLBT receives a claim of infringement they send an e-mail to the person that posted the infringing file, but they do not preserve those e-mails.

   j. Defendant David Compton testified that the only way you can firmly measure the amount of infringement that takes place on the websites is by the number of takedown notices the sites receive.

   k. Defendant David Compton testified that he believes there is a high possibility that Plaintiffs uploaded video files of their own content to the GLBT websites in order to set up infringement claims.

l.  Defendant David Compton testified that they only threats of lawsuits they received were from Plaintiffs.

m.  Defendant Steven Compton testified that he destroyed his laptop because he was angry about the instant lawsuit.

n.  David Compton testified that when GLBT terminated a user from one of the three GLBT websites, they allowed the user to remain active on the other two websites.

17.  During deposition breaks David Compton, his brother, and Mr. Capp shared stories about extensive world travel.  They spoke of Mallorca, Brazil, Gibraltar, Spain, and Ireland.  It is not clear which of these places David Compton had visited but it was clear he has enjoyed extensive travel.

Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated:   July 6, 2011                                      Respectfully submitted,

                                                           */s/ D. Gill Sperlein*

                                                           D. GILL SPERLEIN
                                                           THE LAW OFFICE OF D. GILL SPERLEIN
                                                           Attorney for Plaintiff, IO GROUP, INC.