GILL SPERLEIN (172887)
THE LAW OFFICE OF GILL SPERLEIN
584 Castro Street, Suite 879
San Francisco, California 94114
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

MARC JOHN RANDAZA (269535)
General Counsel
10620 Southern Highlands Parkway #110-454
Las Vegas, NV 89141
Telephone: (619) 866-5975
Facsimile: (619) 866-5976
marc@corbinfisher.com

Attorneys for Plaintiffs,

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IO GROUP, INC., a California corporation, CHANNEL ONE RELEASING, Inc., a California corporation and LIBERTY MEDIA HOLDINGS, LLC., a California corporation,<br><br>    Plaintiffs,<br><br>    vs.<br><br>GLBT, Ltd., a British limited company, MASH and NEW, Ltd., a British limited company, PORT 80, Ltd., a company of unknown origin or structure, STEVEN JOHN COMPTON, an individual living in the United Kingdom, and DAVID GRAHAM COMPTON, an individual living in the United Kingdom.<br><br>    Defendants. | CASE NO.: C-10-1282 MMC (DMR)<br><br>**OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Date:   August 25, 2011<br>Time:   11:00 a.m.<br>Location: Ct Rm 4, 3rd Fl.<br>Judge:  Hon. Donna M. Ryu<br><br>Trial Date:  November 28, 2011 |

-1-

Plaintiffs hereby file this opposition to the Defendants' Motion for Sanctions (ECF 73).

## I. INTRODUCTION

It is said that when the law is against you, pound on the facts; when the facts are against you, pound on the law; when both are against you, pound on the table. Counsel for the defense seems, from day one, to have decided to skip right to step three, and the instant motion is such a obvious example of this, that even counsel for the Plaintiff is embarrassed for him. The Motion does not contain one thoroughly honest statement of fact, nor does it contain a single bit of legal research or support for the assertions therein. Mr. Capp simply pounds on the table in what can only be charitably described as a tantrum. Like any child throwing a tantrum, he should be sent to "time out," and this Honorable Court should not indulge, let alone reward, neither his dishonesty nor his lack of professionalism. Defendants' motion for sanctions is nothing more than retaliation against Plaintiff's well-founded motion for sanctions for spoliation of evidence, and a desperate attempt to lash out at the Plaintiffs for the fact that the Defense is in a complete tailspin.

## II. ARGUMENT

**A.  The Plaintiffs Have Neither Disobeyed This Court's Order, nor Have They Refused to Reimburse Defendants for Reasonable Expenses Related to Attending their Depositions.**

First and foremost, the Motion is premature. The real dispute here is not that the Plaintiffs do not wish to reimburse the Defendants for their costs. In fact, it was the Plaintiff's suggestion that they do so. The real dispute is that Mr. Capp believes that the Defendants should be paid what he subjectively believes they should be paid, without being reasonable about the amounts, and he believes that this unreasonable amount should be paid immediately – and anything less warrants contempt of court. Needless to say, his position is not just unreasonable, but it is downright bizarre.

The parties have tried, in vain, to come to an agreement on what are "reasonable" costs. However, not hearing an answer he likes, Mr. Capp refuses to actually engage in discussion of this matter. The Plaintiffs have repeatedly offered to forward funds to Mr. Capp to hold in his trust account until the parties resolve the issue of what expenses Plaintiffs should reasonably pay for,

and when the payment should be released to Defendants. (Sperlein Declaration at ¶¶6-7). Capp is unsatisfied by this, and insists upon a "cash payment" before there is any agreement on reasonableness, or timing. Capp dishonestly claims that the Plaintiffs have "agreed" that $6,500 is reasonable. His own exhibit demonstrates his clear lack of integrity. (ECF 74-1.) No party has ever "agreed" that $6,500 is reasonable, and the plain language of his own exhibit makes this clear. Capp, rather unprofessionally and childishly, refers to the operative part of his exhibit, (the actual terms of the agreement) as "weasel words" (Exhibit H) and fails to understand that when two sentences are placed together, one can not simply choose the sentence that one likes, and then call the rest of it an attempt to "weasel out" of the interpretation that he prefers. (ECF 73 at 4); (Sperlein Declaration at ¶ 6-13, Exhibits F and G). If Mr. Capp is upset about the terms presented, he does not have the privilege of disregarding operative portions of the terms, and then call what is left an "agreement."

At this point, the parties disagree on what amounts are "reasonable" for reimbursement. Mr. Capp refuses to discuss the amount, except to pound on the table and demand immediate delivery of cash to his office, prior to any determination of reasonableness. Instead of an actual good faith negotiation on whether the funds should be disbursed to his clients immediately, or whether they should be held in his trust account until other dispositive matters are resolved, he brings this instant motion. (Sperlein Declaration at ¶ 13; Exh. H)

With respect to the Defendants' travel, the Plaintiffs were initially willing to travel to any location of the Defendants' choosing. (Sperlein Declaration at ¶ 2, Exhibit A.) However, it became quite apparent that, given the unsupportable positions the Defendants were taking, this Court's intervention would be likely during their depositions.[1] In order to compromise, the Plaintiffs were willing to hold the depositions in Miami (suggested by Defense counsel) or Boston

---

[1] As it turned out, the Plaintiffs were correct in their prediction. The Defendants were openly hostile, physically threatening, and seemed to treat the depositions as if they were a professional wrestling match. Unfortunately, even Defendants' attorney joined in to this fray, which was of little surprise since he appeared at the depositions unkempt, and indeed boasting about, a previous night of intoxication. Once the deposition began, he actually fell asleep during much of the first day's deposition. Truly, the depositions were such a fiasco, from start to finish, that the Plaintiffs did not bother to contact the judge, as it was clear that the witnesses' selective amnesia would have required the judge to clear her entire day's calendar. The videotaped evidence will be submitted to the record.

1 (as this would be the closest point in the United States).  (*Id*.).  Unwilling to compromise, the Defendants forced this issue before the Court, which ruled that the depositions would take place in California.  (ECF 57.)

Even then, the Plaintiffs were willing to accommodate the Defense, and agreed to the Defense's preference to hold the depositions in San Diego.  (*Id*.)  Almost immediately upon the Court issuing its Order (*id*.), the Defense's foolishness began in earnest.  First, Mr. Capp insisted that the Plaintiffs pay for the Comptons' expenses in advance.  (*Id*. at ¶ 3, Exhibit B).  The Plaintiffs would not agree to pay in advance, as the Plaintiffs did not believe that the Defendants would show up unless reimbursement came after they attended the depositions.  (*Id*. At ¶¶4-5).

Nevertheless, the Plaintiffs offered to post a bond with the Court, if the parties could agree on a "reasonable amount," to be held by the court to be disbursed after trial or used as a set-off for any judgment.  (*Id*. at ¶¶ 6 and 7, Exhibit D.)  Mr. Capp then sent a response on June 21, 2011 in which he confirmed what he has said verbally time and again -- that his clients would never pay a judgment that this Court might impose.

> You are not going to get a judgment in this case so there is no point speculating whether it will be paid or not. I've told you European courts don't enforce US style punitive damages....and especially these shake down copyright lawsuits, which are tantamount to extortion. Just as US courts don't enforce penalties and fines from other countries needless to say.
>
> Can you even afford to pay these expenses?
>
> You say the judge is pissed off at us--but she clearly does not trust you with personal data....which is very damning. I'd rather have a judge pissed off at me that be damned by one.  (*Id*. ¶ 3, Exhibit C).

Counsel for the Plaintiffs, nevertheless, made reasonable compromise suggestions:

1. That they would pay Mr. Capp at the close of depositions (to ensure that the Comptons showed up) and would then submit the issue of reasonableness to the court, if the parties could not agree.

2.      That they would submit $12,000 to the Court, to dispense when the Court deemed it appropriate.  (Id. ¶¶ 6-73, Exhibit D).

The reaction from Mr. Capp was an email stating

> We reserve the right to hold you both personally in contempt of court for this shenanigan"  And then a follow up stating, "Furthermore, your proposals present serious ethical problems....as you are tying the payment of costs to the provision of testimony." (*Id*. ¶14, Exhibit H).

Mr. Capp still refused, at any point, to suggest an amount that he considered to be "reasonable."  He further refused, time and again, to even confirm that his clients would show up.  Not receiving any information from him about his client's travel plans, the Counsel for the Plaintiffs began researching flights for the Defendants.  (*Id*. ¶ 10, Exhibit F.)  The Defense, on the other hand, continued to insist that the Plaintiffs must pre-pay for the Defendants' expenses.  ((*Id*. ¶¶ 13 and 14, Exhibit H and I).)  This back-and-forth went on for an unreasonable amount of time, with Mr. Capp finally agreeing that the Plaintiffs could deposit $6,500 in his trust account as security, and then the funds would be disbursed after the issues of reasonableness and timing were resolved.  (*Id*.)  Upon receiving a stipulation to memorialize this agreement (Exhibit I), Capp flew off the handle and refused to agree to the terms.  (Exhibit H; see also Exhibit J).

At this point, since the parties have not yet even fully conferred on the amount due, Mr. Capp's insistence upon being paid immediately, in the amount he demands, with no regard for the Plaintiffs' position, is unsupportable.  The instant motion is doubly so, and has clearly been filed for the purpose of delay and to cause the Plaintiffs to incur unnecessary costs to respond to it.

**B.      The Plaintiffs' position is reasonable, and the amount due should be resolved by this court as $4138.59, and this amount should be held in escrow until a judgment is entered and satisfied.**

Since the Defendants had still not confirmed that they scheduled flights, the Plaintiffs themselves found reasonable flights and accommodations for the Defendants, which would have cost $4777 if purchased. (Exh. M)  **In fact, counsel for the Plaintiffs even agreed to put these costs on his own credit card, with the stipulation that Mr. Capp would provide security for**

**the costs if the Defendants did not show up.** (*Id.*)  The Defendants refused.  On June 22, the Plaintiffs then found another itinerary, which included a single layover in Chicago on the way from London to San Diego, and then a nonstop flight home.  These flights would have cost $3277.74 for both Defendants, had they reserved them immediately. (Exh. F)  While the Defendants complain that this itinerary would have required them to remain in the United States for an extra four days, similar pricing was available for other days, but Plaintiffs' counsel chose this itinerary so that the Defendants would not be jet-lagged during their depositions, and so they could have time to be prepared by their attorney.[2]  The Defendants refused to book a reasonably priced flight when this information was provided to them, and they clearly padded the costs.  The Plaintiffs should not pay for this expense gratuitous excess, they should pay "reasonable" expenses.

The Defendants' claim that they spent $860.85 for their hotel rooms, and given this small amount, the Plaintiffs have not bothered to dispute it.  Adding this figure to the airfare of $3,277.74 , the Plaintiffs stipulate that a reasonable amount of reimbursement is $4138.59.  The Plaintiffs are prepared to pay $4,138.59 either to the Court or to Mr. Capp's trust account, and informed Capp of this fact.  Mr. Capp refuses to even discuss such a resolution, as he is "only interested in an immediate cash offer." (Exh. J).  However, it is the Plaintiffs' position that these funds should remain with the Court or in Mr. Capp's trust account until the case is resolved and judgments are satisfied.

Setoff is not a radical concept.  The English chancery courts allowed setoff as far back as the 17th century. *Prudential Reinsurance Co. v. Superior Court* (1992) 3 Cal.4th 1118, 1124 [14 Cal.Rptr.2d 749, 842 P.2d 48]; 3 Story, Commentaries on Equity Jurisprudence (14th ed. 1918) § 1867, pp. 468-469; see also Tigar, Automatic Extinction of Cross-Demands: Compensatio From Rome to California (1965) 53 Cal.L.Rev. 224 (tracing the history of setoff to the Roman law concept of *compensatio*). It was founded on the equitable principle that "either party to a

---

[2] It is worth noting that during the depositions, the Comptons actually did complain, at length, about being jet lagged. The itinerary chosen by the Plaintiffs would have alleviated that problem, which is precisely why that itinerary was suggested.

transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled only to the net difference, …" *Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352, 362 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].  Even when the Plaintiff is sanctioned, it is proper for the sanction to be applied to the final judgment as a setoff.  See, e.g., *McNeil v. Economics Laboratory, Inc.*, 1988 U.S. Dist. LEXIS 18590 (N.D. Ill. Nov. 4, 1988) (Employee plaintiff awarded $133,162.50, but sanctions against plaintiff act as setoff of $11,987.50).

   The Plaintiffs would be far less insistent upon a setoff if they had any indication that the Defendants would honor any awards issued by this court.  Counsel for the Defendants has repeatedly assured the Plaintiffs that his clients would never pay any judgment, and thus any victory in this case would be pyrrhic. At this point in the litigation, the Defendants have admittedly destroyed key evidence in the case, falsely claiming that the U.K. Data Protection Act requires them to do so.  This is despite the fact that in their initial disclosures, the Defendants clearly stated that any deletion policies had been suspended.  (ECF 11 ¶ 6).   The Defendants now deservedly face terminating sanctions, and it is unthinkable that they will be subject to no sanctions whatsoever for their contumacious conduct. If they have no intent to pay a judgment, there is no reason to presume that they will pay any monetary sanctions this Court imposes.

   Therefore, this case seems to be sharply tilting in the Plaintiff's favor, and this small amount of $4,138.59 may be the only satisfaction that the Defendants can reasonably recover in this case.  Of course, the Plaintiffs take no issue with their responsibility to reimburse the Defendants for their *reasonable* travel expenses – after all, it was the Plaintiffs who suggested this as a compromise.  (ECF 52 at 2).  The only issue that the Plaintiffs have is that a) the amount that the Defendants are demanding is more than double what the Plaintiffs believe is reasonable, and b) that the Defendants are not entitled to be paid this amount until their obligations in this case have been both established and satisfied. Should the Defendants prevail, if the funds are with the court or in Mr. Capp's trust account, they can be disbursed immediately.  Should the Plaintiffs prevail, the Defendants cannot reasonably complain if this $4,138.59 is applied as a set-off.  In the meantime, the Defendants claim revenues of approximately $65,000 per month. (Exh. K, Def.

Resp to Interrogatory No. 7.) It would seem that it would be no hardship if $4,138.59 were held back for a short period of time in order to ensure that justice is at least partially served in this case.

### III. CONCLUSION

The Defendants' Motion is patently unsupportable and unreasonable. For the reasons stated above, it should be denied in its entirety. The Court should issue an order that the Plaintiffs shall deposit $4,138.59 cash or bond with the Court, which shall remain with the Court until a judgment is entered for the Defendants, at which time it should be disbursed to them, or if a judgment is entered for the Plaintiffs, the funds shall be returned to the Plaintiffs as a setoff.

Furthermore, far from deserving to be paid for time expended in drafting this frivolous and unnecessary motion, the Defense should be required to reimburse the Plaintiffs for their fees expended in defending it.

Dated: August 4, 2011

                                              Respectfully submitted,

                                              */s/ D. Gill Sperlein*
                                              D. GILL SPERLEIN
                                              THE LAW OFFICE OF D. GILL SPERLEIN
                                              Attorneys for Plaintiffs


                                              */s/ Marc Randazza*
                                              Marc Randazza
                                              General Counsel
                                              Liberty Media Holdings, LLC

                                              Attorneys for Plaintiffs