1

2

D. GILL SPERLEIN (172887)
THE LAW OFFICE OF D. GILL SPERLEIN

3

584 Castro Street, Suite 879
San Francisco, California  94114

4

Telephone: (415) 404-6615
Facsimile: (415) 404-6616

5

gill@sperleinlaw.com

6

MARC JOHN RANDAZZA (269535)
Liberty Media Holdings, LLC, General Counsel

7

10620 Southern Highlands Pkwy. #110-454
Las Vegas, Nevada 89141

8

Telephone: (888) 667-1113

9

Facsimile: (305) 437.7662
marc@corbinfisher.com

10

11

Attorneys for Plaintiffs

12

**UNITED STATES DISTRICT COURT**

13

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

14

15

IO GROUP, INC., a California corporation,
CHANNEL ONE RELEASING, Inc., a

16

California corporation and LIBERTY

17

MEDIA HOLDINGS, LLC., a California
corporation,

18

19

        Plaintiffs,

vs.

20

21

GLBT, Ltd., a British limited company,
MASH and NEW, Ltd., a British limited

22

company, PORT 80, Ltd., a company of
unknown origin or structure, STEVEN

23

JOHN COMPTON, an individual living in
the United Kingdom, and DAVID

24

GRAHAM COMPTON, an individual

25

living in the United Kingdom.

26

        Defendants.

27

28

) **CASE NO.:  C-10-1282 (MMC)(DMR)**
)
)
)
) **DECLARATION OF D. GILL SPERLEIN IN**
) **SUPPORT OF PLAINTIFFS' OPPOSITION**
) **TO DEFENDNATS' MOTION FOR**
) **SANCTIONS**
)
)
)
) **Date:    August 25, 2011**
) **Time:   11:00 a.m.**
) **Location: Ct Rm 4, 3rd Fl.**
) **Judge:  Hon. Donna M. Ryu**
)
) **Trial Date:  November 28, 2011**
)
)
)
)

I, D. Gill Sperlein, declare:

-1-

1

2    1.    I am a member of the State Bar of California and the bar of this Court.  I am the

3    attorney of record in this matter.

4    2.    Prior to placing the issue of the location of Defendants' depositions with the Court,

5    Plaintiffs offered to Mr. Capp to hold the depositions anywhere in the United States.  See April 8,

6    2011 letter from Marc Randazza attached hereto as Exhibit A.  We also made this offer in our joint

7    letter to Magistrate Judge Ryu, located at docket number 52, p.2.

8    3.    Prior to the depositions Mr. Capp demanded that Plaintiffs pay deposition expenses

9    in advance.   See e-mail from Jon Capp, June 20, 2011 at Exhibit B.

10   4.    Previously, Defendants' Mr. Capp on a number of occasions unequivocally stated

11   that Defendants were not concerned about this litigation because regardless of the outcome,

12   Plaintiffs will not be able to enforce the judgment.  In fact, on July 16, 2010 he threatened that

13   perhaps Defendants would simply default.  Mr. Capp repeated his doubts that Plaintiffs would be

14   able to collect on a judgment several other times during the course of the litigation, including in

15   his June 21, 2011 e-mail attached hereto as Exhibit C.

16   5.    Because, Mr. Randazza and I found Defendants' spoliation of key documents to be

17   consistent with a devil-may-care attitude with regard to a default judgment, we found Mr. Capp's

18   request to advance costs prior to the attending of the depositions to be unreasonable.

19   6.    Thus, we made a number of suggestions on how to approach this issue.  By e-mail

20   on June 21, 2011, I wrote:

> We offer you to options.  I met with Marc Randazza and discussed this in detail.  We jointly drafted the proposed language.
> Offer Number one – Plaintiffs will provide a check at the close of the depositions for $6,500.  We believe this is a reasonable amount for plane fare and hotel bills consistent with the fares in the courtesy email that Mr. Randazza sent you.  After you provide a final tally of expenses, we will either pay it (if it seems reasonable) or after meeting and conferring with you, we will submit it to the Court for a determination as to whether it is reasonable.  All parties reserve the right to amend the amount due and when it should be paid.

Offer Number two.  We will submit a bond to the Court for $10,000 in advance of the depositions.  On any schedule you would like, the parties will submit your clients' expenses to the Court and the Court will decide how much is reasonable and when they should be paid.  Again, we will meet and confer in advance in order to resolve any differing opinions without judicial intervention.  Plaintiffs reserve the right to request that the Court retain the money until the final disposition of the case or to argue that the amounts are unreasonable.

Both these options entirely preserve your clients' interest.  If you reject both offers let's get on the phone.

7.    I restated our position the next day, writing,

Jon:

I've talked to Marc.  We are ok with putting $6500 in your trust account.  We ask (require) that you hold the entire amount until we present your receipts and our argument as to what we believe is reasonable the judge to decide how much your clients are entitled to.  We will do this as soon as you have a final total of your actual charges.
In the mean time I am talking with Marc and trying to stay on track regarding your discovery issues.  I'm looking for compromise and hopefully we can come up with something that will satisfy your needs.

Gill

The full e-mails are attached as Exhibit D.


8.    On June 22, 2011, Mr. Capp, Mr. Randazza, and I conferred by telephone.

However, Mr. Capp became frustrated and hung up in the middle of the conversation.

9.    Mr. Randazza followed the telephone conference with the following e-mail:

Jon,

As we were unable to continue our conversation, due to the fact that you threw a tantrum and hung up on us, I will provide you with the remainder of the information I expected to share with you:

If your clients booked their airfare today, there is another flight option that is even cheaper.  If they book through the British Airways site, they can get a fare for 2,032.86 GBP, which is (as you can see on the attached file) approximately $3239.68 for the airfare.  I would imagine that we can get them in a rather nice hotel for less than $1,000 for the whole time they are here (although I am certain that something on Hotel Circle will be much much cheaper).

Therefore, it seems that even $4777 is generous.  However, I'm really not interested in quibbling over a few bucks here.  Get your clients tickets booked and provide us with the receipts.

If you have failed to do that by the time we discuss this with the judge, or if the fares go up, you can expect that to be an issue.

I also will reiterate my position that you are being dishonest by claiming that there is an "agreement" that $6500 is per se reasonable.  In order to short cut the time we waste arguing about this, we offered to simply agree to give you a check for $6500 at the end of the depositions.  As you can see, that is way over what "Reasonable" could be defined as.  Nevertheless, we offered it in order to save a whole day of bickering with you.

Sperlein Declaration in Support of
Opposition to Defendants' Motion for Sanctions
C-10-1282 (MMC)(DRM)

You rejected that offer.

Perhaps you have remorse that you did not simply accept that offer, and this is why you are acting so tempestuously.  However, your disappointment in not accepting an over-the-top-with-generosity offer is not our concern.  Your clients are entitled to reasonable expenses.   We have set the bar for "reasonable."  If you wish to simply cross your arms and refuse to book fares because you are upset that your clients have to come here, then that is your decision.  However, I do not expect that this will end well for your clients.

To be perfectly honest, I find it most distasteful that you anticipate wasting the judge's time with this matter.  However, we have compromised on our position virtually to the point that nothing remains of our original position.  In contrast, your position remains entrenched and I must say, quite bizarre place.

Mr. Randazza's e-mail is attached hereto as Exhibit E.

10.     Apparently not satisfied with any of our reasonable suggestions, Mr. Capp insisted that the parties immediately submit the matter to Your Honor for determination.  Reluctantly, we agreed and I drafted Plaintiffs' portion of a joint letter brief per the Court's procedures for discovery disputes.

11.     In the evening of June 22, 2011, I Once more wrote to Mr. Capp:

Jon:

Marc and I are greatly concerned that we were unable to resolve this issue.  I light of the fact that depositions are less than a week away, we worked this afternoon to get this draft to you.  Please provide your additions as soon as possible.  We may make amendments after we review what you have to say.

Gill

12.     In response to Mr. Capp's desire to get the matter before the Court in advance of the depositions, I worked all afternoon and forwarded a draft to Mr. Capp.  The next morning Mr. Capp changed his mind and agreed that Plaintiff's would provide a check for $6,500, which would be held in trust until after the expenses were incurred and the parties met and conferred.

We will agree, very reluctantly and under protest to your Offer Number One,
You need to deposit $6500 in to my trust account according to your imposed terms-and which are in contempt of the court order, and otherwise objectionable.

13.     Mr. Randazza and I then drafted a written stipulation to formalize the agreement and forwarded it to Mr. Capp.  Mr. Capp apparently once again had a change of heart, replying:

You need to read my last email..I'm not agreeing to this weasel worded stipulation and I'm not wasting any more of my precious time on your games and contempt.

You either agree to what you stated in your letter to the judge-[which I agree to under protest] or do what you want..

I've made my position very clear on this.

These two emails have been attached as Exhibit H.

14.     Having exhausted our efforts to reach a compromise with Mr. Capp, we left it to him how to proceed.  We did not discuss the matter further until after the depositions.  At that time, Mr. Capp presented receipts.  Plaintiffs challenged the reasonableness of some of the expenses and again stated that Plaintiffs intended to request that the Court allow the posting of a bond until the final judgment on the merits.

15.     When we met and conferred with Mr. Capp for a final time on this issue, Mr. Randazza and I informed him of our belief that the issue falls within the Court's discovery Order and that the proper procedure would be to submit a joint letter brief.  He insisted upon filing a motion.

16.     On June 14, 2011, the Court issued its ordered that the depositions of Defendants would take place in San Diego.  Discovery was set to close on June 30, 2011.  I noticed the depositions for the last two days of discovery in order to provide the maximum time for Defendants to make their travel plans.  Within five minutes, I e-mailed Mr. Capp and asked if those were the best dates for him and his clients.  He never replied.  In fact, he refused to respond when asked directly if his clients intended to show at the depositions.

17.     At deposition, I asked Defendant David Compton if there were any dates that would have been better and he replied, "no."

Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated:   August 4, 2011                          Respectfully submitted,

-5-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ D. Gill Sperlein*

D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN
Attorney for Plaintiff, IO GROUP, INC.

SPERLEIN DECLARATION IN SUPPORT OF
OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
C-10-1282 (MMC)(DRM)