UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP INC, et al., | No. C-10-1282 MMC (DMR) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE** |
| v. | |
| GLBT LTD, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs moved for terminating sanctions for spoliation of evidence, attorneys' fees and costs, and an order compelling the production of certain documents. [Docket No. 63.] The court conducted a hearing on September 22, 2011. No representative for Defendants appeared. Having considered the parties' briefs and accompanying submissions, the court hereby GRANTS Plaintiffs' motion in part and DENIES it in part.

At the September 22, 2011 hearing, the court ordered briefing from Plaintiffs as to the amount of reasonable attorneys' fees and costs that should be awarded as a sanction against Defendants. [Docket Nos. 120 & 121.] Having considered Plaintiffs' submissions, and having deemed that the matter appropriately may be decided on the papers without oral argument, this Order also contains the court's ruling as to the amount of sanctions that should be levied against Defendants in the form of attorneys' fees and costs payable to Plaintiffs.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This is an action for alleged copyright and trademark infringement. In March 2010, Plaintiffs Io Group, Inc., Channel One Releasing, Inc. and Liberty Media Holdings, LLC ("Plaintiffs") filed suit against United Kingdom based-Defendants GLBT, Ltd. ("GLBT"), Mash and New, Ltd., Port 80, Ltd., Steven Compton, and David Compton. The complaint alleges that Defendants operate three websites from which members can upload and download videos in a manner which infringes upon Plaintiffs' copyrighted works and trademarks.

Plaintiffs contend that Defendants operate each of the three websites identically. Defendants store a large number of video files on computer servers they control. Users are able to view a certain number of videos from each of the websites on any given day for free; if a user wishes to watch more than the maximum number allowed, he or she may obtain unlimited access by paying a monthly membership fee, or by uploading video content to Defendants' servers. Plaintiffs thus allege that rather than creating or licensing content for the sites, Defendants encourage users to upload copyright-protected material. (Compl. ¶¶ 29-31.) Plaintiffs further allege that Defendants' business model depends on the uploading, posting, display and performance of copyrighted audiovisual works belonging to Plaintiffs and others. (Compl. ¶ 37.)

Prior to filing the instant lawsuit, Plaintiffs sent Defendants Steven Compton, GLBT, Mash and New, Ltd., and Port 80, Ltd. a letter notifying them of their duty to preserve relevant evidence. (Decl. of G. Sperlein, July 6, 2011, Ex. C.) The letter specifically requested that Defendants preserve, *inter alia*, all electronic video files, emails, copies of any work removed from the websites at the demand of a copyright holder, and all notices or requests to remove content ("takedown notices"). *Id*. Also prior to filing the lawsuit, Plaintiffs sent an email to Defendants' UK counsel regarding Defendants' evidence preservation obligations. (Decl. of G. Sperlein, Ex. E.) Shortly after filing the lawsuit, Plaintiffs notified Defendants' UK counsel of Defendants' evidence preservation obligations by letter once more, again requesting that Defendants preserve specific categories of evidence. (Decl. of G. Sperlein, Ex. D.)

In May 2011, the parties submitted a joint letter brief to the court regarding several discovery disputes. [Docket No. 52.] The court conducted a telephonic hearing on June 13, 2011. During the

hearing, defense counsel claimed that his clients had no documents responsive to a number of discovery requests, and also made troubling representations regarding his clients' practice of disposing of certain kinds of documents. In light of the court's concerns about spoliation of evidence, on June 14, 2011, the court ordered each defendant to submit a sworn, detailed declaration addressing seven specific areas of information. [Docket No. 57.] The requested information included a statement of when the individual or entity became aware of Plaintiffs' lawsuit, a description of the steps taken by the individual or the entity to preserve potentially relevant evidence and to gather documents responsive to discovery requests and when the steps were taken, and the identification of each custodian whose files were searched for relevant evidence and a description of the types of relevant records in each person's possession. *Id*.

On June 23, 2011, individual defendants David Compton and Steven Compton filed declarations on behalf of themselves and the entity defendants regarding their document preservation and collection efforts. [Docket Nos. 61-1, 61-2.] In the present motion for sanctions, Plaintiffs argue that the information provided in the court-ordered declarations reveals evidence of spoliation, and that Defendants' "disjointed, unclear, and evasive answers" to the court's questions about document preservation and collection efforts "hide the true scope of the destruction of evidence." (Pls.' Mot. 4.) Plaintiffs seek terminating sanctions for Defendants' spoliation of evidence, as well as an order compelling Defendants to produce additional documents in response to discovery requests. Plaintiffs have also requested monetary sanctions in the form of attorneys' fees and costs associated with this motion, independent of any other sanctions the court may impose.

On September 9, 2011, the court ordered Defendants to submit additional information regarding Plaintiffs' motion for sanctions, including a sample takedown notice and any corresponding email(s) sent to a user with the notification that the offending posting has been or will be removed. [Docket No. 107.] Defendants did not comply. On September 19, 2011, the court issued an Order to Show Cause why Defendants should not be sanctioned for their failure to comply with the order to submit additional information, and again ordered Defendants to submit the requested information by no later than 12:00 p.m. on September 21, 2011. [Docket Nos. 113, 114.]

3

Defendants did not comply with the Order to Show Cause, nor did they ever submit the requested information.

### III. LEGAL STANDARDS

Courts are vested with inherent powers arising out of "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The Ninth Circuit has recognized trial courts' "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6. F.3d 1318, 1329 (9th Cir. 1993). Therefore, sanctions for spoliation of evidence may be imposed under the court's inherent powers to manage its own affairs. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Courts also have authority to sanction a party "who fails to obey an order to provide or permit discovery" pursuant to Federal Rule of Civil Procedure 37(b)(2)(A). *Id*. (internal quotation marks omitted).

Where spoliation has occurred, the determination of an appropriate sanction "is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (internal citations omitted). In determining whether and what type of sanctions to issue, courts generally consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.").

Courts have developed three types of sanctions for destruction of evidence. First, "[t]he spoliation of evidence germane to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (internal quotation marks omitted). Second, a

4

court can exclude witness testimony based on the spoliated evidence. *See Unigard*, 982 F.2d at 368-369. Third, a court may dismiss the claim of the party responsible for the spoliation when the court determines that "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). "Before imposing the 'harsh sanction' of dismissal," either pursuant to a court's inherent power or to Rule 37, a court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*. (internal quotation marks and citations omitted). The court need not find bad faith by the offending party before issuing terminating sanctions for destruction of evidence; willfulness or fault may suffice. *Id*.; *Unigard*, 982 F.2d at 368 n.2.

## IV. DISCUSSION

The court will first determine whether Defendants' declarations complied with the June 14, 2011 order to provide detailed information about Defendants' document preservation and collection. Next, the court will address the parties' arguments about evidence spoliation and Plaintiffs' request for an order compelling the production of additional documents by Defendants. Finally, the court will address whether sanctions are appropriate for Defendants' failure to comply with the court orders to provide additional information regarding the motion for sanctions and the September 19, 2011 Order to Show Cause.

### A. Defendants' Document Preservation and Collection Efforts & the Court's Order to Provide Declarations Detailing the Same

Defendants made troubling representations about their document retention practices, raising serious questions about the integrity of their preservation and collection efforts. The court responded by ordering each Defendant to submit declarations regarding document preservation and collection efforts. The court set forth seven specific areas of inquiry for each declarant to address in detail in the declarations, and even emphasized the words "detailed declaration" in the order. Plaintiffs argue that the declarations fail to comply with the order to respond to each area of inquiry,

and that Defendants provided disjointed, unclear, and evasive information in response to the court's order.

The court agrees. The declarations provided by Defendants completely omitted much of the requested information, and were evasive and unforthcoming. For example, neither declaration included any information about the steps taken to preserve potentially relevant evidence and when the steps were taken, whose files were searched for relevant evidence, what types of relevant records were in each person's possession, and how the files were organized, stored, and maintained. Neither declaration provided information about the approximate number or size of relevant records for each person whose files were searched for relevant evidence, other than the vague statement that "[a]ll potentially relevant information is contained in our extensive database." (Decl. of D. Compton ¶ 4, June 22, 2011; Decl. of S. Compton ¶ 5, June 22, 2011.) Steven Compton provided no information about what steps he took to gather documents responsive to discovery requests and when the steps were taken, and David Compton only stated that "[t]he database was searched." (Decl. of D. Compton ¶ 7, June 22, 2011.) His declaration is silent as to when it was searched or any other steps he took to gather responsive documents.

With regard to whether relevant information has been destroyed, both declarants gave contradictory information. Steven Compton first stated "[w]e have not 'destroyed' any evidence that is relevant to this case," but then claimed that if any evidence was destroyed, it would have been "relevant to our defense." (Decl. of S. Compton ¶ 6.) He then admitted that Defendants have "deleted the actual emails containing the DMCA notices [notices to take down or remove content]." *Id*. David Compton echoed Steven Compton's statement that if any evidence was destroyed, it would have been relevant to Defendants' defense. (Decl. of D. Compton ¶ 8, June 22, 2011.) He then stated "we have systematically deleted all emails that are sent to the site, this included DMCA take down notices." *Id*. at ¶ 9.

Addressing Defendants' data retention policy, Defendants provide only the vaguest of information, stating "[p]ersonal data is not kept for a period longer than is necessary, having regard to the purposes for which they are processed." (Decl. of D. Compton ¶ 10, June 22, 2011 (emphasis omitted); Decl. of S. Compton ¶ 7 (emphasis omitted).) Both declarants admitted that they "do not

6

keep emails however as [they] have been advised by [their] UK lawyers this would violate the Data Protection Act." (Decl. of D. Compton ¶ 11, June 22, 2011; Decl. of S. Compton ¶ 8.)

In sum, the court concludes that Defendants failed to provide adequately detailed declarations regarding their document preservation and collection efforts, and thus violated this court's June 14, 2011 order. Defendants' failure to comply with a court order "to provide or permit discovery" is sanctionable pursuant to Rule 37(b)(2)(A). The court finds that the payment of reasonable expenses, including attorneys' fees, by Defendants to Plaintiffs for the failure to comply with the order as a sanction is appropriate, as discussed further *infra*. *See* Fed. R. Civ. P. 37(b)(2)(C).

### B.     Spoliation of Evidence

Litigants are under a duty to preserve "what [they know], or should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). The duty extends to "any documents or tangible things . . . made by individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses.'" *Id*. at 217-218 (quoting Fed. R. Civ. P. 26(a)(1)(A)). The duty to preserve evidence arises as soon as the parties reasonably anticipate litigation. *Id*. at 216.

Plaintiffs assert that the information contained in Defendants' declarations reveals that Defendants failed to meet their preservation and collection obligations and destroyed relevant evidence. Plaintiffs also submitted deposition testimony by David Compton in which he explained that Defendants receive email "takedown" notifications and requests to remove alleged infringing material from Defendants' three websites. Defendants respond by emailing users that material they have posted to the websites is the subject of a takedown notice and is being removed. (D. Compton Dep. 57:20-58:21, 60:6-10, June 29, 2011.) However, he also testified that Defendants' email system automatically deletes both incoming and outgoing emails after three to four days. (D. Compton Dep. 131:2-5; 132:15-18; 58:22-59:7.) It appears Defendants did not suspend the automatic deletion function until July 2011, *over a year* after the lawsuit was filed. (Decl. of D.

Compton ¶ 11, July 20, 2011.) Further, when Defendants receive takedown notices, they remove the audiovisual content from the websites and delete it from their servers. (D. Compton Dep. 53:19-54:6.)

This evidence, along with information contained in the declarations themselves ("we have systematically deleted all emails that are sent to the site" (Decl. of D. Compton ¶ 9, June 22, 2011.)), clearly demonstrates that Defendants violated their duty to preserve relevant evidence, and that spoliation occurred with respect to three categories of evidence: takedown notices, audiovisual files removed from the websites, and emails. Plaintiffs argue that Defendants' spoliation was willful, particularly in light of the fact that Plaintiffs sent three separate evidence preservation letters. Therefore, Plaintiffs contend that Defendants have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings," that a fair trial on the merits is impossible given the extent of the spoliation, and that an entry of default is appropriate. (Pls.' Mot. 17, quoting *Leon*, 464 F.3d at 958.)

Defendants do not dispute that audiovisual files, takedown notices, and internal emails were deleted. Their opposition is silent as to any justification for deleting takedown notices and audiovisual files, and their sole justification for the destruction of emails is that UK's Data Protection Act ("DPA") does not permit them to retain personal data for longer than is necessary, and actually *requires* them to delete emails. Defendants argue that the facts of this case are distinguishable from *Leon* and *Anheuser-Busch*, which "involved parties who had engaged in a pattern of deception over a number of years and which involved dishonesty" to the court. In contrast, Defendants contend they "have been fully frank with the court and have fully admitted what they have done" and "have obeyed all [c]ourt orders." (Opp. at 6.) Defendants argue that they have now retrieved some of the missing emails and files[1], and have "undertaken to desist from deleting anything in the future." (Defs.' Opp'n 8.) Therefore, while Defendants concede that an

---

[1] Defendant David Compton submitted a declaration in connection with Defendants' opposition to the present motion in which he represents that he "[has] been able to retrieve all emails deleted for the past 6 weeks," and that he "[has] also been able to retrieve all video clips deleted from the site since November 25, 2010. Now nothing is being deleted." (Decl. of D. Compton ¶ 11, July 20, 2011.)

8

1 adverse inference instruction "may be appropriate," they argue that terminating sanctions are not
2 warranted. (Defs.' Opp'n 7.)

3 With respect to their systematic deletion of emails, Defendants' argument appears to be that
4 the DPA shields them from sanctions for spoliation. However, Defendant has offered no evidence
5 that audiovisual files and takedown notices contain any personal data protected by the DPA. The
6 third class of evidence, emails, potentially could contain personal data, but Defendants have made
7 no showing that any, let alone *all*, of the destroyed emails contained such protected information.
8 Moreover, Defendants have provided no authority supporting their interpretation of the DPA, and
9 this court has already considered and rejected Defendants' argument that the court lacks authority to
10 order the production of documents that Defendants claim are protected by the DPA. *See* Order Re
11 Joint Letter Re Discovery Disputes 2-3, June 14, 2011 [Docket No. 57]; *see also Richmark Corp. v.*
12 *Timber Falling Consultants*, 959 F.2d 1468, 1474 (9th Cir. 1992) ("it is well settled that such
13 [foreign 'blocking'] statutes do not deprive an American court of the power to order a party subject
14 to its jurisdiction to produce evidence even though the act of production may violate that statute."),
15 *quoting Societe Nationale Industrielle Aerospatiale v. United States Dist. Court*, 482 U.S. 522, 544
16 n.29 (1987); *Columbia Pictures Indus. v. Bunnell*, No. 06-1093, 2007 WL 2080419, at *11-12 (C.D.
17 Cal. May 29, 2007) (examining application of Netherlands' DPA to discovery dispute); *Int'l Med.*
18 *Group, Inc. v. Essential Health, Ltd.*, No. 08-923, 2010 WL 3169395, at *1 (S.D. Ind. July 16, 2010)
19 (rejecting application of UK's DPA).

20 In sum, Defendants have conceded that they destroyed evidence and have not demonstrated
21 that production of the spoliated evidence would have been "impossible," or that production "would
22 subject [them] to civil or criminal sanctions." *Jorgensen v. Cassidy*, 320 F.3d 906, 912 (9th Cir.
23 2003). Therefore, the court must determine what type of sanctions are appropriate. *Unigard*, 982
24 F.2d at 368. The court will consider the three *Schmid* factors in making this determination.

25       **1.**     **Degree of Defendants' Fault**

26 The first factor is the degree of fault of the party who destroyed the evidence. "A party's
27 destruction of evidence qualifies as willful spoliation if the party has some notice that the documents
28 were *potentially* relevant to the litigation before they were destroyed." *Leon*, 464 F.3d at 959

(emphasis in original) (citation omitted). Here, the destroyed documents clearly were relevant. Moreover, Defendants had ample notice that the files they destroyed were potentially relevant to the litigation. Plaintiffs notified Defendants of their obligation to preserve evidence no less than three times (twice before filing suit), and explicitly identified the evidence they sought to be preserved. Yet Defendants did not suspend their automatic deletion function on their email system until July 2011, over a year after the lawsuit was filed. The court concludes Defendants "consciously disregarded" their obligation to preserve relevant evidence. *See Hamilton v. Signature Flight Support Corp.*, No. 05-0490, 2005 WL 3481423, at *7 (N.D. Cal. Dec. 20, 2005) (listing cases holding sanction for failure to preserve evidence appropriate "only when a party has consciously disregarded its obligation to do so").

### 2.     Degree of Prejudice Suffered by Plaintiffs

Plaintiffs argue that there is no way to determine the amount of prejudice they may have suffered as a result of Defendants' spoliation, given that the information contained in the lost evidence "touches virtually every element of Plaintiffs' copyright claims and every element of Defendants' defenses." (Pls.' Mot. 22.) Contrary to Defendants' assertions that if any evidence was destroyed, it would have been relevant to *Defendants'* defense, the court finds that it is Plaintiffs who have been prejudiced as a result of Defendants' destruction of evidence.

With respect to the deleted audiovisual files, Plaintiffs are prejudiced by not being able to examine the files and related metadata for any "red flags" indicating that infringement was likely. Such red flags could render Defendants ineligible for safe harbor protections of the Copyright Act. *See* 17 U.S.C. § 512(c)(1)(A) (service provider not liable for infringement if has no actual knowledge that material is infringing). Further, Plaintiffs seek to hold Defendants liable under the doctrines of contributory liability and vicarious infringement. In order to prove these claims, Plaintiffs must first demonstrate that there has been direct infringement of their copyrights by third parties, i.e. the users posting infringing material. *Columbia Pictures Indus., Inc. v. Fung*, No. 06-5578, 2009 WL 6355911, at *7 (C.D. Cal. Dec. 21, 2009). By deleting the content removed from their sites as a result of takedown notices, Defendants destroyed key evidence that would allow Plaintiffs to prove the underlying infringement.

10

The loss of takedown notices and corresponding removal notification emails also prejudices Plaintiffs. First, the trier of fact may consider the extent of copyright infringement on Defendants' websites when analyzing a claim of inducement to infringe. *See Columbia Pictures*, 2009 WL 6355911, at *10 (scale of infringement occurring through use of defendants' products is evidence of intent to induce infringement). Although the number of takedown notices does not alone determine the amount of actual infringement on the site, a large number of notices could indicate that a large portion of the material on the site is infringing. In addition, in order to be eligible for safe harbor protection, Defendants must show that they have policy in place providing for the termination of repeat infringers. 17 U.S.C. § 512(i)(1)(A). Defendants claim that they have such a policy in place, but without the ability to examine the takedown notices and corresponding emails, Plaintiffs have no way of challenging the implementation and enforcement of the policy because they cannot examine whether Defendants actually terminated individual users who repeatedly posted infringing material.

Finally, the destruction of Defendants' internal emails renders it impossible for Plaintiffs to explore Defendants' motivation and state of mind in operating their websites; this is key to Plaintiffs' claim of secondary infringement based on inducement. *See Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913, 937-939 (2005) (examining evidence of intent to cause infringement, including internal communications).

Therefore, the court concludes that Plaintiffs have been prejudiced as a result of Defendants' evidence spoliation.

### 3. Whether a Lesser Sanction Would Avoid Substantial Unfairness to Defendants

Next, the court must consider whether a lesser sanction is appropriate. Rejection of lesser sanctions is appropriate when (1) no lesser sanction could both punish Defendants and deter others similarly tempted and (2) the facts show that deceptive conduct has occurred and will continue. *Advantacare Health Partners, LP v. Access IV*, No. 03-4496, 2004 WL 1837997, at *6 (N.D. Cal. Aug. 17, 2004) (citations omitted). Here, a lesser sanction, such as an adverse inference instruction, could both punish Defendants and deter others similarly tempted. Such instructions would restore Plaintiffs to the position in which they would have been had Defendants not destroyed evidence. To

the extent an adverse inference may place Plaintiffs in a more advantageous position than if Defendants had never destroyed evidence to begin with, the inference is nevertheless appropriate, as it places the risk of an erroneous judgment on the party that wrongfully created the risk. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

Further, it does not appear that Defendants' deceptive conduct will continue to occur. Defendants have retrieved some of the missing emails and files, and have taken steps to "desist from deleting anything in the future." (Defs.' Opp'n 8.) Therefore, the court concludes that default sanctions are not appropriate because Defendants' actions "do not eclipse entirely the possibility of a just result." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006) (internal quotation marks omitted).

### 4. Adverse Inference Sanctions

As discussed above, the court finds that adverse inferences in Plaintiffs' favor are warranted with regard to the categories of evidence that Defendants concede were destroyed. In order for a court to impose an adverse inference sanction, Plaintiffs must demonstrate "'(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *In re Napster, Inc.*, 462 F. Supp. 2d at 1078 (quoting *Hamilton*, 2005 WL 3481423, at *3).

As discussed above, Defendants deleted takedown notices, audiovisual files, and internal emails which it had a duty to preserve, knowing that such a duty existed. Defendants' conduct amounts to willfulness, which is sufficient culpability to justify an adverse inference. *Hamilton*, 2005 WL 3481423, at *5. In addition, the documents and files were relevant to the action as discussed above. Therefore, Plaintiffs are entitled to adverse inference instructions in the form of rebuttable presumptions. Given the specific evidence destroyed by Defendants, the court orders the following rebuttable factual presumptions: 1) third parties posted material on Defendants' websites that infringed Plaintiffs' copyrights; 2) Plaintiffs submitted takedown notices to Defendants

1  regarding the infringing material; and 3) Defendants did not take steps to remove Plaintiffs'
2  infringing material from their websites.

### C. Motion to Compel

Plaintiffs also seek an order compelling the production of additional documents responsive to their discovery requests. Plaintiffs argue that the court previously ordered Defendants to produce documents responsive to a number of discovery requests, but that Defendants failed to produce all responsive documents. Discovery closed on June 30, 2011.

First, Plaintiffs seek additional documents responsive to Request for Production ("RFP") No. 7, which sought all billing files related to gayforit.com, one of Defendants' websites. Plaintiffs argue that instead of producing responsive documents, Defendants only produced a spreadsheet that appears to be a summary or compilation of information found in billing files. Plaintiffs seek the records underlying the summary. Defendants respond that they use a third party biller, that the requested records are in the third party biller's possession, and that the information on the spreadsheet reflects all of the billing information in Defendants' possession. Given that Defendants are not in possession of the actual billing files, Plaintiffs' request for an order compelling further responses to RFP No. 7 is DENIED.

Next, Plaintiffs seek additional documents responsive to RFP No. 9, which sought all documents showing Defendants terminated services for members who violated their repeat infringer policy. Defendants only produced a spreadsheet which appears to be a summary of information about certain users, and Plaintiffs seek the documents underlying the summary. Defendants respond that all of their records relating to banned users are contained in a digital database, and that the spreadsheet properly presents all of the information contained in the records.

It is clear that some documents responsive to this request, such as emails, systematically were deleted by Defendants. However, Defendants have represented that as of July 20, 2011, they suspended the automatic delete function on their email system and retrieved all emails deleted for the previous six weeks. (Decl. of D. Compton ¶ 11, July 20, 2011.) Therefore, Plaintiffs' request for an order compelling further responses to RFP No. 9 is GRANTED. Defendants are ordered to produce all responsive documents in their possession, custody, and/or control. In its June 14, 2011

1  Order [Docket No. 57], the court ordered Defendants to produce documents responsive to a number
2  of Plaintiffs' requests, but permitted Defendants to redact the names and street addresses of
3  individual users, as well as the users' bank account and credit card account information.
4  Accordingly, in producing additional documents responsive to RFP No. 9, Defendants may redact
5  said information.

Finally, Plaintiffs seek additional documents responsive to RFP No. 2, which seeks all documents in Defendants' possession that reference Defendants' three websites. According to Plaintiffs, in Defendants' privilege log, served on June 23, 2011, Defendants identified for the first time a database containing over 1.8 million pages of responsive documents, and claimed the documents were privileged pursuant to European data protection laws. Defendants' opposition clarifies that the database only contains 1.8 million records, as opposed to pages, and argues that Plaintiffs' motion is untimely.

Although Plaintiffs' request is clearly overbroad, Defendants' only argument for withholding the information is on the basis of the DPA, an argument the court has already considered and rejected. Therefore, Plaintiffs' request for an order compelling further responses to RFP No. 2 is GRANTED. In producing additional documents responsive to RFP No. 2, Defendants may make redactions consistent with the court's June 14, 2011 Order.

### D. Reasonable Attorneys' Fees and Costs

Defendants' violation of the order to provide document preservation and collection declarations justifies the imposition of sanctions in the form of reasonable attorneys' fees and costs incurred in bringing this motion. Defendants' declarations failed to answer many basic questions, and answered others with minimal information and conclusory statements. They were far from the "detailed declarations" ordered by the court, and certainly raised more questions than they answered. As a result, Plaintiffs spent unnecessary resources to challenge the deficient declarations. Further, Defendants failed to comply with two court orders to submit additional information regarding the present motion prior to the September 22, 2011 hearing on the motion, as well as an Order to Show Cause why Defendants should not be sanctioned for their failure to comply with the order to submit additional information. [Docket Nos. 107, 113, & 114.] This failure to comply with a court order

"to provide or permit discovery" is sanctionable pursuant to Rule 37(b)(2)(A), and the payment of reasonable expenses, including attorneys' fees, by Defendants to Plaintiffs for the failure to comply with the order as a sanction is appropriate. *See* Fed. R. Civ. P. 37(b)(2)(C).

Plaintiffs argue that they should be compensated for 52.5 hours of work spent by their counsel in connection with the motion for sanctions at the hourly rates of $335 and $450, for a total of $19,945. [Docket Nos. 120 & 121.] Defendants did not submit an opposition to Plaintiffs' request.

Having carefully reviewed the time records submitted by Plaintiffs, the Court finds that Plaintiffs should be awarded a total of $15,000 in reasonable attorneys' fees and costs. This amount takes into account a reduction in the amount of fees sought by Plaintiffs due to the fact that they did not entirely prevail on their motion. The sanctions shall be paid to Plaintiffs within forty-five (45) days of the date of this Order.

## IV. CONCLUSION

For the foregoing reasons the court hereby GRANTS Plaintiffs' motion in part and DENIES it in part, and awards fees to Plaintiffs in the amount of $15,000.

IT IS SO ORDERED.

Dated: October 19, 2011



DONNA M. RYU
United States Magistrate Judge