D. GILL SPERLEIN (172887)
THE LAW OFFICE OF GILL SPERLEIN
584 Castro Street, Suite 879
San Francisco, California  94114
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

MARC JOHN RANDAZZA (269535)
RANDAZZA LEGAL GROUP
10620 Southern Highlands Parkway, 110-454
Las Vegas, NV 89141
Telephone: 888-667-1113
Facsimile: 305-437-7662 (fax)
MJR@randazza.com

Attorneys for Plaintiffs,

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IO GROUP, INC., a California corporation, CHANNEL ONE RELEASING, Inc., a California corporation and LIBERTY MEDIA HOLDINGS, LLC., a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> GLBT, Ltd., a British limited company, MASH and NEW, Ltd., a British limited company, PORT 80, Ltd., a company of unknown origin or structure, STEVEN JOHN COMPTON, an individual living in the United Kingdom, and DAVID GRAHAM COMPTON, an individual living in the United Kingdom. <br><br> Defendants. | CASE NO.:  C-10-1282 (MMC) <br><br> **NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEFENDANTS' COUNSEL JONATHAN CAPP** <br><br> **Date:**   December 9, 2011 <br> **Time:**   9:00 a.m. <br> **Location:** Ct Rm 7, 19th Floor |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 9, 2011 at 9:00 a.m., in Courtroom 7, 19th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Io Group, Inc., Channel One Releasing, Inc., and Liberty Media Holdings, LLC., (collectively Plaintiffs) will, and hereby do move this Court to issue an Order that Defendants' Counsel Jonathan Charles Capp be held jointly and severally liable for sanctions previously levied against Defendants and additional sanctions as the Court finds just.

This notice will be based on this Notice of Motion and Motion, the Points and Authorities herein, the declarations and exhibits to the Motion, pleadings and papers filed in this matter, and on any other evidence as the parties may submit at the hearing on the Motion, if any.

**POINTS AND AUTHORITIES**

The Plaintiffs seek an Order finding Defendants' attorney, Jonathan Charles Capp, Esq., jointly and severally liable for sanctions Magistrate Judge Ryu previously levied only against Defendants and for any additional Plaintiff attorneys' fees incurred since September 5, 2011, due to Capp's misconduct, negligence, or other improprieties.

On October 21, 2011, the Defendants filed a letter with the court in which the Defendants claim they instructed Mr. Capp telephonically and by email that he was no longer employed as their attorney. [ECF 129] Defendants claim they repeated this instruction on September 17, 2011. [*Id.*] During that time, Mr. Capp did nothing more

than file an ambiguous notice stating that he was instructed to no longer participate in the proceeding. [Notice by GBLT, Ltd. and all other Defendants, ECF 115]

It is the Plaintiffs' belief that Mr. Capp has been aware of the Defendants' intention to default in this matter since well before September 5.  However, the letter filed by his clients make it abundantly clear that he was so aware at least as early as September 5, 2011.  Due to Mr. Capp's failure to engage this case reasonably, these proceedings have been unnecessarily multiplied in violation of 28 U.S.C. § 1927 by Mr. Capp's failure to communicate with Plaintiff's counsel and by his apparent failure of candor with the Court.

Mr. Capp's failure and refusal to communicate with Plaintiff's counsel continues. On Friday, October 21, 2011, counsel for the Plaintiff attempted to call Mr. Capp. However, Mr. Capp did not respond to phone calls seeking his position with regards to this motion, until October 27.  Declaration of D. Gill Sperlein in Support of Motion for Sanctions against Defendants' Counsel Jonathan Charles Capp at ¶2.  At that time, he merely sent an e-mail indicating he is "going to move to withdraw and [is] discussing how best to do that with The Comptons." *Id*. at ¶2.  Still, he has filed no motion. *Id*.  This places the Plaintiffs in a position of being ethically prohibited from communicating with the Defendants directly, but with Mr. Capp refusing to communicate with the Plaintiffs. Further, Mr. Capp knew or should have known that this entire case, from the Defendants' perspective, was nothing more than a delay tactic.  If so found, Capp's acts or omissions would expose him to liability.

Under 28 U.S.C. § 1927, an attorney who unreasonably multiplies the proceedings in any case may be required by the court to satisfy the excess costs, expenses and

attorneys' fees reasonably incurred because of such conduct. The Ninth Circuit has taken a broad reading of this statute, allowing sanctions to be awarded where litigation was pursued in subjective "bad faith," or "recklessly." *U.S. v. Blodget*, 709 F.2d 608, 610 (9th Cir. 1983). While this is usually employed against plaintiff's counsel, there is no limitation prohibiting defendant's counsel from unnecessarily prolonging or multiplying proceedings. Such sanctions are not only proper in this case, but necessary. See *In re Keegan Mgmt., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996); *Estate of Blas ex rel. Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986); *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050-51 (9th Cir. 1985).

Filings made solely for the purpose of delay constitute bad faith and are sanctionable under § 1927. *Blodget*, 709 F.2d at 610. Moreover, a "district court has inherent power to award attorney's fees for bad faith conduct." *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1220 (9th Cir. 2003).

Mr. Capp made it clear at the outset of this litigation that his clients intended to default if the litigation did not trend in their direction. After the initial case management conference, Mr. Capp had a discussion with Plaintiffs' counsel Gill Sperlein in which he flatly stated that Defendants were not motivated to settle because even if Plaintiffs obtained a judgment, they would not be able to enforce it against the Defendants. Sperlein Declaration at ¶3. Capp repeated this statement throughout the litigation process several times. *Id.* at ¶3; Randazza Declaration at ¶3. On one occasion, he wrote in an e-mail that European courts would not enforce what he called "US style punitive damages." Sperlein Declaration at ¶4. Nevertheless, this case has been litigated by the Defense without any

intention of actually presenting a cogent defense. The goal has been to delay and to exercise personal animus toward the Plaintiffs' counsel. [*See, e.g.,* ECF 71 ¶6 (Steven Compton Declaration stating that the Plaintiffs' counsel are "'copyright trolls', not lawyers."); ECF 72 ¶¶16-19 (David Compton Declaration referring to Plaintiffs as "copyright trolls," accusing Plaintiffs of "'shake-down' schemes", and stating they received advice to "just throw the complaint in the trash."); ECF 79 (Excerpts from David Compton Deposition) at pg. 4:7 –5:13 (calling counsel a "troll" and asserting no intention to follow U.S. preservation standards), at pg. 8:4-20 (refusal to follow preservation notices), at pg. 10:25 – pg. 11:21 (Defendant did not keep video files despite it not being an item required to be disposed of according to the Digital Protection Act), at pg. 20:1 – pg. 21:25 (Defendant accuses Plaintiff's counsel of intentionally planting the uploaded videos for the purposed of affecting the instant litigation); and ECF 80 (Excerpts from Steven Compton Deposition) at pg. 4:10-19 (asserting that Plaintiffs' counsel is a "copyright troll").] The repeated discovery violations and willful spoliation of evidence outlined in Plaintiffs' Motion for Terminating Sanctions (ECF 63) are further evidence that from the onset of litigation Defendants and Mr. Capp never had any intention of seriously defending this matter. Mr. Capp was well aware of this fact, and was a knowing and voluntary participant in this bad faith conduct. Further, the Defendants' bad faith actions of spoiling evidence and dissipating assets were likely undertaken at the direction of, with the advice of, or otherwise through collusion with Mr. Capp. Moreover, a review of

communications between Capp and the Defendants will likely shed more light on that subject.[1]

While Plaintiffs likelihood of success in this matter has always been clear and Defendants always intended to default, Defendants had significant motivation to delay the inevitable. As evidenced by their response to interrogatories, they were collecting at least $195,000 per month. Sperlein Declaration at ¶5, Exhibit A. Of course, given the level of mendacity and the willingness to destroy and withhold evidence that the Defendants have shown, the amount of revenue the Defendants were continuing to collect is likely much higher. However, Defendants understood that even if they could hide other assets from Plaintiffs, they could lose control over the registrations for the domain names from which they were operating the infringing websites. Thus, it made sense to hire a lawyer to stay just engaged enough to prevent default for as long as they could. Once Plaintiffs moved for terminating sanctions for Defendants' destruction and withholding of documents (ECF 63), Defendants recognized it was time to jump from the sinking ship. They moved their infringing operations to domains controlled from within Europe, even though they likely lost significant revenue in doing so. [*See*, Declaration of Matthew Leonard in Support of Plaintiffs' Motion for T.R.O., ECF 85 at ¶18] Having moved all assets out of the United States, they no longer needed to continue the charade of a defense in which they had previously engaged. [*See*, Plaintiffs' Motion for TRO, ECF84, *in passim*] Defendants began redirecting traffic to the European based websites on approximately July 7, 2011.

---

[1] Since the Defendants discharged him on or before September 5, 2011, no privilege would apply to any communications after September 5, 2011.

[*Id*.] From that day forward, as they trained customers to go to the new domain names instead of the old ones, the value of the US based domain names decreased and the value of the European based domains increased. Finally on September 5, 2011, Defendants abandoned the three U.S. based .com domains altogether. Sperlein Declaration at ¶6. Not coincidentally, this is the same day Defendants apparently instructed their attorney to withdraw, and thus abandoned their defense. [Compton letter, ECF 129]

Even if Capp had not been aware of Defendants long-term strategy of delaying entry of default in order to continue collecting more than $195,000 a month in revenue, he certainly understood what was happening when they depleted and then abandoned their U.S. assets in the form of .com domain registrations and then fired him without engaging replacement counsel. Given that no other plausible explanation existed for his clients' actions, Mr. Capp should have inquired as to his clients' motivation at that point even if he had not previously. Indeed, he was under a duty to do so. He was also obligated to file a motion to withdraw as counsel, which would have allowed Plaintiffs and the Court an opportunity to make inquiries. Rather, Mr. Capp delayed for fifteen days (from September 5th until September 20th) and then filed a cryptic notice that his clients instructed him to no longer participate in the proceedings. [ECF 115] When Plaintiffs counsel asked about the meaning of this notice, he refused to provide any further information. Sperlein Declaration at ¶7; *See also*, Declaration of Erika Dillion in Support of Motion for Contempt, ECF 110 at ¶10. Although we cannot know whether Mr. Capp drafted and filed the notice at the instruction of his clients and for their benefit, or submitted the notice on his own accord to avoid the possible denial of a proper motion to withdraw, it is clear that Mr. Capp cleverly

constructed the notice to delay a complete termination of the litigation process. He certainly understood the implication of his actions and that as counsel of record, his failure to continue Defending his clients with important motions pending would be *per se* malpractice and a gross dereliction of his duties. He knew that Plaintiffs' counsel would continue prosecuting the case because they did not (and could not) know if the Defendants had abandoned their defense entirely or just sought to replace their attorney. Thus, as a sanction, Mr. Capp the Court should order that Mr. Capp be jointly and severally liable with his clients for the legal fees Plaintiffs continued to expend as a result of Capp's failure in his duty of candor to the Court and his complacency in his clients' improper litigation tactics. Further, the Court should increase the sanctions to include the additional fees Plaintiffs have expended in continuing to prosecute this case including fees associated with bringing this Motion.

Since the day the Comptons claim to have instructed Mr. Capp to withdraw, Plaintiffs have continued prosecuting this case without knowing whether the Defendants are still defending or if they have surrendered to default. Mr. Capp could have and should have put an end to all this. Since September 5th the prosecution has had to monitor or respond to the following activities:

- Plaintiffs filed a Motion for an Order of Contempt (ECF 108), which Defendants failed to oppose and which the Court granted in part. [ECF 123]
- Magistrate Ryu issued an Order directing Defendants to submit an example of a real take down notice and a corresponding automated e-mail notifying the user the posting would be removed, which Defendants ignored. [ECF 114]

Case3:10-cv-01282-MMC   Document131   Filed10/31/11   Page9 of 10

- Plaintiffs appeared at a motion hearing on Plaintiffs' Motion for Terminating Sanctions at which Defendants failed to appear. [*See*, Minute Order, ECF118]

- Plaintiffs appeared at a motion hearing on Defendants' Motion for Sanctions at which Defendants failed to appear. [*Id.*]

- Defendants failed to provide further discovery requests as Magistrate Judge Ryu ordered; [ECF 124, 13:23-14:17]

- Defendants ignored the Court's Order directing them to turn over domain registrations to a receiver. [*See*, Order Granting in Part Plaintiffs' Motion for Order Finding Defendants in Contempt, ECF123]

- Mr. Capp failed to meet and confer, or to jointly draft and submit a joint Case Management Conference Statement. Sperlein Declaration at ¶7.

An attorney threatened with sanctions under § 1927 is entitled to a hearing. *Reynolds v. Roberts*, 207 F.3d 1288, 1302 (11th Cir. 2000). Accordingly, this Court should either hold an evidentiary hearing of its own or designate Magistrate Judge Ryu to conduct the necessary evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1), which permits a district court to refer matters to a magistrate judge to hold hearings and supply the court with proposed findings of fact and recommendations for disposition. At such hearing Mr. Capp should be required to explain why he should not be jointly and severally liable for the sanctions Judge Ryu ordered in her October 19, 2011 Order and for any additional attorney fees expended as a direct result of Capp's failure to file a proper motion to withdraw or to inform the Court and the Plaintiffs that his clients were electing to accept entry of default.

9   MOTION FOR AN ORDER TO SHOW CAUSE
C-10-1282 (MMC)

# CONCLUSION

After an evidentiary hearing, the Court should order that Defendants' Counsel Jonathan Charles Capp is jointly and severally liable for the sanctions previously levied only against Defendants and additional sanctions as the Court finds just.

Respectfully Submitted,

Dated: *October 31, 2011*                    *s/ Marc Randazza*
                                             Marc J. Randazza

                                             *s/ D. Gill Sperlein*
                                             D. Gill Sperlein

                                             Attorneys for Plaintiffs