D. GILL SPERLEIN (172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California  94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorneys for Plaintiffs Io Group, Inc.
and Channel One Releasing, Inc.

MITCHELL J. LANGBERG (171912)
mlangberg@bhfs.com
LAURA E. BIELINSKI (264115)
lbielinski@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
2029 Century Park East, Suite 2100
Los Angeles, CA  90067-3007
Telephone:  (310) 500-4600
Facsimile:  (310) 500-4602

Attorneys for Plaintiff Liberty Media Holdings, LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

IO GROUP, INC., a California corporation, CHANNEL ONE RELEASING, Inc., a California corporation and LIBERTY MEDIA HOLDINGS, LLC., a California corporation,

     Plaintiffs,

          vs.

GLBT, Ltd., a British limited company, MASH and NEW, Ltd., a British limited company, PORT 80, Ltd., a company of unknown origin or

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.:  C-10-1282 (MMC)**

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DAMAGES AND DEFAULT JUDGMENT**

DATE:  Nov. 30, 2012
TIME:  9:30 a.m.
COURTROOM:  7, 19th Floor

structure, STEVEN JOHN COMPTON,   )
an individual living in the United   )
Kingdom, and DAVID GRAHAM   )
COMPTON, an individual living in the   )
United Kingdom.   )
   )

    Defendants.

_____

# TABLE OF CONTENTS

**TABLE OF AUTORITIES**                                                          iv

**I.  SUMMARY OF ARGUMENT**                                                       1

**II. PROCEDURAL HISTORY**                                                        4

**III. ARGUMENT**                                                                 5

    **A. In light of the Difficulty Inherent in Proving Lost Sales Where Defendants Have Refused to Provide Evidence, Plaintiffs Request that the Court Calculate Plaintiffs Damages Based on Retroactive Licensing Fees.**                                                    5

    **B. Plaintiffs Are Entitled to the Amount a Willing Buyer Would Have Been Reasonably Required to Pay a Willing Seller for the Use of Plaintiffs' Works.**                                          8

    **C. Defendants Failed to Meet Their Burden to Present Evidence That a Portion of Their Illicit Profit Comes from Sources Other Than the Infringement of Plaintiffs' Works.**                       12

    **D. Plaintiffs Alternatively Request Entry of Judgment Based on Statutory Damages.**                                              16

    **E. Plaintiffs Request that the Court Enter Separate Judgments for Each Plaintiff.**                                                 19

**IV.CONCLUSION**                                                                 19

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE
SUMMARY JUDGMENT ON DAMAGES
C-10-1282 (MMC)

# TABLE OF AUTORITIES

## <u>Cases</u>

*Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 ................................................. 18

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985)................................................... 14

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 .......................................................................... 17

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) ...................................... 13, 15

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993) ................................................................................................ 15

*Hamil America Inc. v. GFI*, 193 F.3d 92 (2nd Cir. 1999) ...................................................................................... 3

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 105 S. Ct. 2218 (1985)..................................... 7

*International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652 ................................................................................ 17

Jarvis v. K2 Inc., 486 F.3d 526 (9th Cir. 2007) ................................................................................................. 3, 7

*Microsoft Corp. v. Marturano*, 2009 U.S. Dist. LEXIS 44450 ............................................................................ 17

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) ............................................................................ 7, 8, 14

*Playboy v. Webbworld*, 968 F. Supp. 1171 .......................................................................................................... 18

*Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004)................................................ 6, 7, 8

Sid & Marty Krofft Television Prods, Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir. 1977).................... 3, 7

*Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354 (9th Cir. 1947) ...................................................... 6

*Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068................................................................................. 18

*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) ..................................................................... 15

## <u>Statutes</u>

17 U.S.C. § 504 ....................................................................................................................................... 13, 17, 18

17 U.S.C. § 504(c)................................................................................................................................................ 17

17 U.S.C. §504(b) ................................................................................................................................................. 7

## <u>Other Authorities</u>

Convention on Choice of Court Agreements, June 30, 2005 ("Hague Convention"), *reprinted in* 44 I.L.M. 1294 (2005)................ 2

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE
SUMMARY JUDGMENT ON DAMAGES
C-10-1282 (MMC)

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.  SUMMARY OF ARGUMENT

Although the Court has entered summary judgment against the two individual Defendants and entered default against the businesses entity defendants, the Defendants masterfully continue to control this litigation to their advantage.  Defendants essentially elected to default after first drawing out the litigation process while they continued to reap the financial benefits of their entirely infringing operation.  Even today, they continue to operate their infringing websites, albeit from domain names that are administered from outside the United States and perhaps beyond the reach of this Court.[1]

Defendants have withheld or destroyed evidence that would otherwise allow Plaintiffs and the Court to evaluate the extent they have damaged Plaintiffs.  If their past conduct is any indication of their intent, Defendants likely hope that the deficiencies they have caused in the evidence will force Plaintiffs to request statutory damages, knowing that Plaintiffs cannot enforce such a judgment in the United Kingdom where Defendants' assets are located.  While Defendants' willful infringement, open contempt for this Court, and admitted spoliation of evidence certainly justify the maximum statutory damage award

---

[1] Defendants maintain registrations for the domain names <jerkyourtube.eu>, <itsallgay.eu>, and <gayforit.eu> in direct defiance of this Court's Order directing them to turn over those domain name registrations to the Court-appointed receiver (Order Granting in Part Plaintiffs' Motion for Preliminary Injunction, ECF 103) and consequently continue to accrue contempt sanctions.  Order Granting in Part Plaintiffs' Motion for Order Finding Defendants in Contempt, ECF 123 at 2:15-20.

of one hundred fifty thousand dollars ($150,000) per infringed work, such a judgment would be a hollow victory for Plaintiffs.

Defendants have expressly indicated through counsel that their strategy is guided by their conviction that Plaintiffs cannot enforce a statutory damages award in the United Kingdom.   *See* Declaration of D. Gill Sperlein in Support of Plaintiffs' Motion for Sanctions against Defendants' Counsel Jonathan Capp, ECF No. 133 at ¶3.   That is, Defendants are counting on the fact that courts in the United Kingdom do not generally enforce judgments based on statutory damages where the award is considered punitive. Under the Hague Convention, adopted by the European Union (which includes the United Kingdom), "[r]ecognition or enforcement of a judgment may be refused if, and to the extent that, the judgment awards damages, including exemplary or punitive damages, that do not compensate a party for actual loss or harm suffered."  *See* Convention on Choice of Court Agreements, June 30, 2005 ("Hague Convention"), *reprinted in* 44 I.L.M. 1294 (2005), *available at* http://www.hcch.net/index_en.php?act=conventions.pdf&cid=98, Art. 11(1).   In practice, this provision of the Hague Convention stifles enforceability of United States judgments based on statutory damages under the Copyright Act, because European Union countries view those damages as punitive.  The Court should not allow Defendants to prevail in their attempt to pervert the litigation process.

Thus, Plaintiffs must obtain an award of actual damages if they hope to be compensated for Defendants' egregious conduct giving rise to - and continuing throughout - this action. In light of the difficulties of proving lost sales due to the unavailability of evidence exclusively in the hands of Defendants, Plaintiffs now seek to calculate their

damages using the lost licensing fee method of evaluating damages endorsed by the Ninth Circuit in *Sid & Marty Krofft Television Prods, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1174 (9th Cir. 1977) and more recently in *Jarvis v. K2 Inc.,* 486 F.3d 526, 533 (9th Cir. 2007).

Plaintiffs do not abandon their claim to recover Defendants' profits.  Plaintiffs have met their burden of proving Defendants' gross revenue.  Defendants have not challenged Plaintiffs' arguments, nor have they met their burden of proving that any of their profits are attributable to other sources or that the profits should be offset by related expenses.  An injustice would result if the Court shifts this burden of proof to Plaintiffs, especially in light of Defendants' pervasive and continuous litigation abuses.

A plaintiff may not recover both its damages and Defendant's profits if those profits are already accounted for in the damages calculation.  *See Hamil America Inc. v. GFI*, 193 F.3d 92, 108 n.7 (2nd Cir. 1999).  Thus, Plaintiffs elect either Defendants' profits or the value of a retroactive licensing fee.

Plaintiffs believe they present sufficient evidence in connection with this Supplemental Memorandum to establish their actual damages, or the amount of Defendants' illicit profits.  However, as a last resort, Plaintiffs seek statutory damages, although they will likely be unable to recover any such judgment.[2]

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE
SUMMARY JUDGMENT ON DAMAGES
C-10-1282 (MMC)

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint for copyright infringement and other claims against three business entities and two individual defendants.  Defendants, through counsel, made it clear from the beginning that their chief strategy was to avoid collection on the inevitable judgment.  Defendants refused to deliver all but a handful of documents in response to requested discovery and admitted to the spoliation of a vast amount of documents.  *See* Plaintiffs' Motion for Terminating Sanctions for Spoliation of Evidence, ECF No. 63, *in passim*.  As a result, Magistrate Judge Ryu imposed a number of adverse inference sanctions in the form of rebuttable presumptions.  Order Granting in Part and Denying in Part Plaintiffs' Motion for Sanctions for Spoliation of Evidence, ECF No. 124, 12:12 to 13:2.

In anticipation of a negative ruling on Plaintiffs' Motion for Sanctions, Defendants dissipated the sole assets they held in the United States by transferring their websites from United States-based .com domain names to European-based .eu domain names.  *See* Plaintiff's Motion for Temporary Restraining Order, ECF No. 84, *in passim*.

The Court then entered a Preliminary Injunction finding that Plaintiffs are likely to succeed on the merits and ordering Defendants to turn over control of all the .com and .eu domain name registrations to a Court-appointed receiver.  Order Granting in Part Plaintiffs' Motion for Preliminary Injunction, ECF No. 103.  Defendants ignored the mandates of the Preliminary Injunction, and the Court issued contempt sanctions, which

---

[2] Plaintiffs do not waive their right to actual damages or Defendants' profits and

have been accumulating at the rate of $1,000 a day since October 12, 2011.  Order re

Contempt, ECF No. 123.  Further, Defendants ignored Judge Ryu's order to pay attorneys'

fee sanctions in the amount of $15,000.  Order Granting in Part and Denying in Part

Plaintiffs' Motion for Sanctions for Spoliation of Evidence, ECF 124.

When the corporate defendants failed to engage new counsel after terminating their

former counsel, the Court entered default against the corporate defendants.  ECF No. 145.

Plaintiffs brought a Motion for Summary Judgment on liability against the individual

defendants, which the Court granted, finding the individual defendants liable for copyright

infringement.  ECF No. 165.  Plaintiffs then filed a Motion for Summary Judgment on

Damages against the individual Defendants and a Motion for Default Judgment against the

defaulting business entity Defendants ("MSJ").  ECF No. 186.  Finding that Plaintiffs'

showing on the record before the Court was insufficient to support the award Plaintiffs

requested, the Court entered an order ("MSJ Order") affording Plaintiffs leave to file a

supplemental brief and any additional evidence in support of an award based on Plaintiffs'

lost sales and Defendants' profits.  ECF No. 194.

## III.   ARGUMENT

### A. In light of the Difficulty Inherent in Proving Lost Sales Where Defendants Have Refused to Provide Evidence, Plaintiffs Request that the Court Calculate Plaintiffs Damages Based on Retroactive Licensing Fees.

Significantly, although uncertainty as to the ***fact*** of damages may preclude their

recovery, uncertainty as to the ***amount*** of damages will not necessarily preclude recovery

hereby preserve the arguments made in support thereof for the purposes of appeal.

of actual damages.  *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 369 (9th Cir. 1947).  As to the amount, a plaintiff seeking to recover actual damages is not required to establish a precise value for the rights infringed, but rather need only present evidence sufficient to allow the finder of fact to assess the fair market value of its copyrighted work without "undue speculation."  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) *opinion amended on denial of reh'g,* 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004).

Here, there can be no doubt that Plaintiffs suffered harm as a result of Defendants' infringement.  The only question is the amount of actual damages, which Plaintiffs could easily establish in the form of lost sales if Defendants meaningfully participated in this action.  Because they have not, Plaintiffs must prove their actual damages with the information available to them, including their knowledge of the value of their works.  *See, e.g., Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 369 (9th Cir. 1947) (finding that, like any personal property, the owner of copyrighted works may testify as to the works' value).

To that end, and in light of the Court's concerns over Plaintiffs' calculation of actual damages through lost sales,[3] Plaintiffs have reexamined their options for proffering actual damages calculations under the Copyright Act.  Because the Copyright Act allows a

---

[3]   The Court expressed concern because Plaintiffs could not provide evidence that any of the subscribers who obtained infringing copies of Plaintiffs' copyrighted works from Defendants would have purchased those videos from Plaintiffs in the absence of Defendants' infringement.  MSJ Order.  Thus, the Court found Plaintiffs did not provide a sufficient factual basis for calculating lost sales.

plaintiff to recover compensatory damages in the form of actual damages but does not specifically enumerate the procedures for calculating actual damages (17 U.S.C. §504(b)), federal courts have fashioned a number of appropriate methods to calculate damages, only one of which is lost sales.[4]

Relevant here is that in addition to endorsing a lost sales analysis, the Ninth Circuit endorses a retroactive license fee (at the fair market value rate) as one measure of actual damages. *See Sid & Marty Krofft Television Prods, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1174 (9th Cir. 1977); *Polar Bear Productions*, 384 F.3d at 708 (confirming "the value of the use of the copyrighted work to the infringer" as among the actual damages available, and upholding jury award of license where plaintiff provided credible evidence in support of awarded amount); *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) ("In situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.") (citations omitted); *see also On Davis v. The Gap, Inc.*, 246 F.3d 152, 162-164 (2d Cir. 2001) (acknowledging that the Second Circuit and other courts hold that a reasonable royalty fee is an appropriate measure of actual damages under the Copyright Act, "and the Supreme Court has suggested, albeit obliquely, that such a measure of damages is appropriate") (citing *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 562, 105 S. Ct. 2218 (1985)).

---

[4]     For example, the Second Circuit has recognized three different measures for damages: 1) lost sales to various customers; 2) lost sales to the infringer; and 3) the value

-7-

Significantly, a plaintiff is not required to prove that it would have successfully negotiated a license with the defendant, nor is it precluded from seeking license damages simply because it has never before licensed what the defendant infringed. *Polar Bear Productions*, 384 F.3d at 709 ("[i]t is not improper for a [fact finder] to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on 'undue speculation'"); *see also On Davis,* 246 F.3d at 171-72 (2nd Cir. 2001) ("[t]he hypothesis of a negotiation between a willing buyer and a willing seller simply seeks to determine the fair market value of a valuable right that the infringer has illegally taken from the owner[,] ... [t]he usefulness of the test does not depend on whether the copyright infringer was in fact himself willing to negotiate for a license") (citation and quotation omitted).

Thus, in this matter, the Court can value actual damages in the form of a reasonable license fee in the amount a willing buyer would have been reasonably required to pay a willing seller for the use of Plaintiffs' works.  Moreover, because adult content producers (including two of the three Plaintiffs) regularly license works, there is significant evidence as to the nature and amount of a reasonable licensing agreement.

**B. Plaintiffs Are Entitled to the Amount a Willing Buyer Would Have Been Reasonably Required to Pay a Willing Seller for the Use of Plaintiffs' Works.**

Erotic film producers routinely license their works under a variety of different licensing models, and those models are relatively consistent throughout the industry.

---

of the use of the infringing copies in terms of the acquisition costs saved.  *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357, 360 (7th Cir. 1985).

-8-

There are a large number of erotic film producers throughout the world, but a relatively small number of licensors.  These licensors generally license works from a variety of content producers, so that their customers can come to one website to view a variety of content.  Ruoff Declaration in Support of Supplemental Memorandum in Support of Motion for Summary Judgment on Damages and Motion for Default Judgment (Ruoff Supp. Decl.) at  ¶ 3.

The industry generally refers to the companies licensing content for viewing at centralized websites as VOD companies, because they commonly provide access to the erotic works through a business model referred to as Video-On-Demand.  They are also known as aggregators, as they aggregate content from different producers.  Defendants in this matter acted as aggregators (albeit illegal ones).  They obtained content of various erotic content producers, although they did not enter licensing agreements with those producers.  *Id*. at ¶4.

Aggregators and content producers typically enter licensing agreements based on a royalty model.  When the aggregator receives revenue from its customers, it shares the revenue with the licensing production company on a percentage bases.  Plaintiffs have provided specific examples of licensing agreements showing the percentages they received as a license fee for on-line sales.  *Id*. at ¶6.  Although there is some variation in the percentage that adult companies negotiate, the royalty rate would generally never drop below twenty percent of revenue.  Declarations of Erik Schut (Schut Decl.), Eric Johnson (Johnson Decl.), and Jeff Dillon (Dillon Decl.) in Support of Plaintiffs' Supplemental Memorandum in Support of Motion for Summary Judgment on Damages and Motion for

Default Judgment at ¶¶4, 6, and 4, respectively.  Premium companies such as Plaintiffs would always comand at least twenty-fve percent (25%) or more.  *Id*.  None of the Plaintiffs have ever licensed their works for lower than twenty-five percent (25%).  Ruoff Decl. at ¶6; Declarations of Rob Novinger (Novinger Decl.) and Henry Leonard (Leonard Decl.) in Support of Plaintiffs' Supplemental Memorandum in Support of Motion for Summary Judgment on Damages and Motion for Default Judgment ¶¶6 and 7, respectively.

In order to determine the retroactive licensing fee for Plaintiffs' works, it is necessary to evaluate what a customer would pay to view the works.  Licensing agreements always contemplate that the licensor will sell access to movies in terms of either "per minute viewing" or a fixed purchase price for viewing a work.  *See* Declarations of Schutz, Johnson, Dillon, Ruoff, and Novinger and Licensing Agreements filed under seal concurrently herewith.  For example, a customer may pay a fee for access to a movie for 24 or 48 hours or perpetually (e.g. for life).  *See e.g.*, Johnson Decl. at ¶7.  Because Defendants did not apply any technical measures for preventing download of the videos, the access they sold to their customers was equivalent to perpetual access.[5]

In some, but not all cases, Plaintiffs were able to record the number of times Defendants' customers accessed each of the infringed works, because this information was available on Defendants' websites.  To be clear, Plaintiffs only seek damages in the form of

---

[5] Under a reasonably negotiated licensing agreement, a licensor would be required to use commercially reasonable efforts to prevent unauthorized copying of the materials.  *See* Ruoff Decl at ¶7.

retroactive licensing fees for those videos for which they were able to preserve evidence of infringing access.  Plaintiffs submit the pages from Defendants' websites for each of the videos for which they claims lost licensing fees.  Each page shows the number of customers to which Defendants delivered a copy of the video ("views").  *See* Ruoff Decl. Exhibit B; Novinger Decl. Ex. B; and Leonard Decl. Ex. B.  These records reflect that Defendants allowed their users to access (with the ability to download) Plaintiffs' works a minimum of 4,150,259 times.  *Id*.

Content producers do not generally allow licensees to sell works based on a monthly unlimited viewing model tends to devalue content.  Johnson Decl. at ¶8; Dillon Decl. at  ¶6; Schut Decl. at  ¶6.  Plaintiffs in this matter never allow licensees to sell works based on an unlimited viewing model.  Ruoff Decl. at ¶10; Novinger Decl at ¶7; and Leonard Decl. at ¶6 .  Moreover, in some cases, the licensors control the pricing so that the aggregator cannot charge below a minimum price set by the licensor.  Ruoff Decl at ¶11.

If Defendants had sold Plaintiffs' works under a reasonable negotiated licensing agreement, the minimum amount Plaintiffs or other reasonable licensors in their place would have agreed to allow Defendants to charge for viewing their works on a "download-to-own" basis as Defendants did, would be from between $3.95 and $6.95 per scene, as set forth below.[6]  In fact, in most cases Plaintiffs required the sale price to be considerably higher.  *See* licensing agreements filed under seal.

_____

[6] Although under one agreement Io Group, Inc. allowed its secondary brands to be sold for as low as $2.49, this price was for a one time "streaming" viewing of the video, not a download-to-own purchase.

The total value of Plaintiffs' damages in the form of a lost license can then be calculated by multiplying the following: (1) the total number of infringing views; (2) the amount each view would have generated in revenue; and (3) the percentage of the sale that would be due under a reasonable licensing agreement.   Plaintiffs therefore request an award of actual damages, calculated as follows and as supported by the exhibits and declarations attached hereto and filed concurrently herewith:[7]

| Plaintiffs | Infringing Views | Price | Value of Sales (Infringing Views x Price) | Licensing Royalty Fee (25% of Value of Sales) |
|---|---|---|---|---|
| Io Group, Inc. | 2,597,703 | $4.95 | $12,858,629.85 | $3,214,657.46 |
| Channel One Releasing, Inc. | 943,056 | $4.95 | $4,668,127.20 | $1,167,031.80 |
| Liberty Media Holdings, LLC[8] | 103,271 | $3.95 | $407,920.45 | $101,980.11 |
| | 506,229 | $6.95 | $3,518291.55 | $879,572.89 |
| | | | Total | $5,363,242.26 |

**C. Defendants Failed to Meet Their Burden to Present Evidence That a Portion of Their Illicit Profit Comes from Sources Other Than the Infringement of Plaintiffs' Works.**

---

[7]   As set forth in Section E herein, Plaintiffs request individual judgments in an amount of one-third of the total award.

[8]   As fully set forth in the Leonard Decl. at ¶5, Liberty would charge $6.95 for all but two of the scenes for which Liberty requests a retroactive license fee if those scenes were sold on a per-scene basis.   Liberty's request thus reflects what it would actually charge for each scene.

It is the infringer's burden to establish the amount of any warranted offset.   17 U.S.C. § 504.   "In establishing the infringer[s'] profits, the [plaintiffs are] required to present proof only of the infringer[s'] gross revenue, and the *infringer[s] [are] required to prove [their] deductible expenses and the elements of profit attributable to factors other than the copyrighted work*."   *Id.* (emphasis added).

Until Defendants provide evidence that part of their profit came from sources other than from the exploitation of Plaintiffs' works, Plaintiffs are entitled to recover the full amount of the illicit profits.[9]   Even if Defendants had presented evidence of overhead expenses to be deducted from their gross profits, where there are discovery abuses, it is within the Court's power to sanction Defendants by not allowing such deductions.   *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505, n. 9 (9th Cir. 1985).

Where courts have required a plaintiff to narrow the scope of revenue, they have suggested that evidence of revenue from the same type of activity is sufficiently narrow. For example, where a plaintiff brought suit against the Gap for the use of an advertisement containing his copyrighted "nonfunctional jewelry worn in the manner of eyeglasses," the Second Circuit held that it was not sufficient for Plaintiff to present evidence of the Gap's total revenue for the period of time of the infringement.   However, the Court stated that it was, "incumbent on [plaintiff] to submit evidence at least limited to the gross revenues of

_____

[9] While Plaintiffs concede that Defendants exploited the works of other copyright holders on their website, it does not concede that any portion of the revenue made from the websites is attributable to those other works.   It is the Defendants' burden to produce evidence that the profits are attributable to some other source, and Defendants have failed to do so.

the Gap label stores, and perhaps also limited to eyewear or accessories." *On Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir. 2001).

Here, the Defendants' business is limited to selling access to gay-oriented erotic videos. All of their revenue comes from this limited source. Thus, the source of the revenue is limited to a specific category of revenue, i.e. revenue from selling gay erotic films on the relevant websites. Plaintiffs have met their burden and the Defendants must now come forth with evidence of what percentage of the revenue may have come from sources other than the infringement of Plaintiffs' works, if any. Any such evidence is entirely in their hands and the Court should not reward them for destroying or failing to produce such evidence by granting Defendants the precise relief they hope for—an uncollectable statutory damage award. Where the infringer has not met its burden, the Court cannot and should not shift this burden to the Plaintiffs, especially because (1) information concerning any offset is exclusively in the hands of the Defendants, (2) Defendants have refused to provide such information in discovery, and (3) Defendants have had every opportunity to respond to Plaintiffs' Motion for Summary Judgment on Damages, but have refused to do so.

While *Cream Records, Inc. v. Jos. Schlitz Brewing Co.* (cited in the MSJ Order) suggests that the Court should make an apportionment where an infringer's profits are not entirely due to the infringement, the facts of *Cream* are distinguishable from the those presented here. *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985). In the first instance, *Cream* involved indirect profits. The Ninth Circuit has held that a district court can preclude recovery of a defendant's profits if they are only remotely

or speculatively attributable to the infringement.  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505, 517 (9th Cir.1985).  The defendant in *Cream* did not put forth evidence of apportionment, because it argued that *none* of its profits were attributable to the infringement of the Plaintiff's work because the connection was too speculative. *Cream*, 772 F.2d at 828.

The matter before the Court does not involve indirect profits, and Defendants are the only parties in possession of evidence relevant to their sources of revenue from the infringing websites.  Unlike in *Cream*, the information concerning the amount of sales attributable to the infringement of Plaintiffs' works is readily available and could easily be analyzed *if Defendants put forth the evidence*.

Under a spoliation of evidence analysis, the Court should presume that this evidence is culpatory in nature and supports a finding that a substantial portion, if not all, of the profits are indeed attributable to the infringement of Plaintiffs' works.  "The spoliation of evidence germane to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (internal quotation marks omitted).  The Ninth Circuit has recognized trial courts' "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  Where Defendants have failed to produce any evidence of apportionment or offset because it has withheld or destroyed evidence, an injustice would result if the Court shifts the burden of proof to the Plaintiffs.  Rather, it would be appropriate for the Court to make an inference

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE
SUMMARY JUDGMENT ON DAMAGES
C-10-1282 (MMC)

that any evidence the Defendants destroyed or failed to produce would have been unfavorable to them.  Therefore, until and unless Defendants provide contrary evidence, all of their revenue should be considered profits from the infringement of Plaintiff's works and Plaintiffs request that the Court enter judgment in this amount.  Plaintiffs suggest that, at the very least, it would be appropriate for the Court to issue an Order to Show Cause as to why the Court should not make such an inference.

Since Plaintiffs may not obtain a double recovery, they request that the Court enter judgment in the amount of the greater of 1) Plaintiffs' actual damages in the form of retroactive licensing fees, or 2) Defendant's revenues for the sale of erotic videos on their websites, reduced only if Defendants show cause as to how such revenues can be apportioned between revenue from the illegal sale of Plaintiffs' works and deductible expenses under the Copyright Act.

### D. Plaintiffs Alternatively Request Entry of Judgment Based on Statutory Damages.

For the reasons set forth above, Plaintiffs respectfully argue that the Court should enter judgment in the amount of the value of the licensing fees Defendants should have paid to Plaintiffs or in the amount of illicit profits earned by Defendants, whichever is greater.  However, if the Court is unpersuaded by Plaintiffs' arguments, than Plaintiffs must accept an entry of judgment based on statutory damages although it most likely will never be able to enforce such a judgment against these foreign Defendants.

If the infringed works were registered with the U.S. Copyright Office prior to the commencement of the infringing activity, which they were, the copyright holder may elect

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE
SUMMARY JUDGMENT ON DAMAGES
C-10-1282 (MMC)

statutory damages of $750.00 to $30,000.00 per work, increased to $150,000.00 in cases of willful infringement.  17 U.S.C. § 504(c).  Each of one hundred ninety-four (194) infringed works were registered prior to the commencement of the infringing activity.  Complaint at ¶47; Exhibit A.  Plaintiffs previously submitted registration certificates to the Court. Declaration of D. Gill Sperlein in Support of Plaintiff's Motion for Summary Judgment against Defendants John Compton and David Graham Compton, Exhibits A, B, and C. ECF Nos. 149-152.

The "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct."  *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 97 L. Ed. 276, 73 S.Ct. 222 (1952).  It is appropriate that the Court use opportunities such as this to send a message of deterrence to would be infringers that, "it costs less to obey the copyright laws than to disobey them".  *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N.Ill. 1987), *affirmed* 855 F. 2d 375 (D.N.Ill. 1987).  The facts here clearly portray Defendants sneering in the face of copyright owners and copyright laws. Defendants have ignored Court orders, spoiliated evidence, and continue to infringe Plaintiffs' works, as well as, the works of other producers.  Other courts have considered damage awards in factually similar cases to establish the appropriateness of a statutory damage award.  *See Microsoft Corp. v. Marturano*, 2009 U.S. Dist. LEXIS 44450 (E.D. Cal. May 27, 2009).   On a motion for default judgment, a district court awarded a maximum statutory award of $150,000 each for infringement of *The Last Samurai* and *Mystic River*, when a member of the Academy of Motion Picture Arts and Sciences who

-17-

had been provided with a screener copy of the movies allowed the movies to be duplicated and distributed via the Internet.  *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004).  In C*olumbia Pictures Indus. V. Krypton Broad. of Birmingham, Inc.*, the Ninth Circuit affirmed an award of approximately $72,000 per willful infringement of several half-hour television shows.  *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001) (*cert denied*, 534 U.S. 1127 (2002)

Prior federal court decisions have recognized the high economic value of erotic material.   A federal court awarded $5,000 per erotic photograph (*Playboy v. Webbworld*, 968 F. Supp. 1171, 1176 (E.D. Tex. 1997) and where infringement was found to be willful a court awarded $100,000 (the maximum award at the time) per adult photograph.  *Perfect 10, Inc. v. Talisman Communs., Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11. (C. D. Cal.).

Considering that  a) Defendants knew of this litigation and had the opportunity to participate,  b)  other  courts  have  routinely  granted  maximum  statutory  awards  in corresponding circumstance, and c) Defendants have a long history of willfully infringing works and continue to infringe Plaintiffs' works even after Plaintiffs brought this action, a significant award of statutory damages is justified.

Plaintiffs respectfully request that the Court exercise the discretion granted under 17 U.S.C. § 504(c)(1) and award one hundred fifty thousand dollars ($150,000.00) for each infringed motion picture eligible for statutory damages.   Plaintiffs presented evidence that Defendants infringed one hundred ninety-four (194) separate registered works for which Plaintiffs own the copyrights or exclusive licenses to copyrights.  Accordingly, Plaintiffs request that if the Court finds that there is insufficient evidence to enter judgment based on

Plaintiff's actual damages or disgorgement of Defendants illicit profits, than it enter judgment for based on a statutory damage award of twenty-nine million, one hundred thousand dollars ($29,100,000).

**E.  Plaintiffs Request that the Court Enter Separate Judgments for Each Plaintiff.**

Plaintiffs have agreed between themselves that each Plaintiff will be entitled to one third of the total judgment entered in this action.  Thus, Plaintiffs respectfully request that regardless of the total amount of the judgment, that the Court enter a judgment for one third of the total judgment in favor of each of the Plaintiffs and jointly and severally against the all the defendants.

## IV. CONCLUSION

Plaintiffs have proffered sufficient evidence to establish the amount of royalties due from Defendants under a retroactive licensing agreement based on what reasonable parties would have negotiated.  The amount of that licensing fee based on Defendants' use of Plaintiffs works is five million, three hundred sixty-three thousand, two hundred forty-two dollars and twenty-six cents ($5,363,242.26).   Alternatively, because Plaintiffs have provided evidence of Defendants' gross revenues and Defendants have failed to meet their burden of establishing that any portion of this revenue came from sources other than the infringement of Plaintiffs' works (although they should reasonably be able to produce such evidence) Plaintiffs are entitled to recover the full amount of the gross revenue in the amount of ten million, three hundred thirty-five thousand dollars ($10,335,000.00), particularly in light of Defendants' discovery abuses and spoliation of evidence.  Finally, and only as a last resort, the Court may enter and award of statutory damages in the

-19-

amount of twenty-nine million, one hundred thousand dollars ($29,100,000) based on the willfulness of Defendants' actions and their litigation abuses.

Respectfully submitted,

Dated: *October 26, 2012*

THE LAW OFFICE OF D. GILL SPERLEIN

By: */s/ D. Gill Sperlein*

D. GILL SPERLEIN
Attorneys for Plaintiffs Io Group, Inc.
and Channel One Releasing, Inc.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

Dated: *October 26, 2011*       By: */s/ Laura E. Bielinski*

LAURA E. BIELINSKI
Attorneys for Plaintiff Liberty Media
Holdings, LLC

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE
SUMMARY JUDGMENT ON DAMAGES
C-10-1282 (MMC)